PEOPLE ex rel. AMERICAN SURETY CO. et al. v. BENHAM, Warden of State Prison.

(Supreme Court, Special Term, New York County. March 9, 1911.)

1. CRIMINAL LAW (§ 100*)—CONFLICTING JURISDICTION—PRIORITY OF JURISDICTION.

The court first obtaining jurisdiction of person or property retains it to the end, and cannot be deprived thereof; and hence, where a federal court obtained jurisdiction of one accused of conspiracy, it did not lose jurisdiction because a state court tried and sentenced him for another offense while out on bail during the pendency of an appeal from the judgment of the federal court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 114; Dec. Dig. § 100.*]

2. CRIMINAL LAW (§ 100*)—POWERS—JURISDICTION — PRISONERS UNDER COMMITMENT.

M., an attorney, having criminally obtained a large amount of property from a client, fled from New York, where he was indicted, and next appeared in Philadelphia, under another name, where he was convicted of another offense against the United States, and appealed, giving a bail bond from a surety company. To obtain this, he indemnified the surety company by a deposit of cash realized from a sale of property bought with the stolen funds. While at large on bail, he went into New York and was there convicted and imprisoned under the original charges. The client's administrator had in the meantime obtained judgments in New York and in the federal court in Philadelphia, declaring the property purchased by M. in Philadelphia and the cash deposit with the surety company to be the property of his intestate. Subsequently, the conviction in the federal court having been affirmed, and M. not appearing when called, his bail was forfeited, and the United States sued the surety company on the bond. Held, on certiorari against the warden of the New York state prison to bring up the record of M.'s commitment, brought by the surety company and the administrator to obtain the surrender of M. to the federal authorities, so as to exonerate his bail, that the justice of the state court was not acting as a federal judge, because of Rev. St. U. S. § 1014 (U. S. Comp. St. 1901, p. 716), authorizing the judges of state courts, where an offender against the United States is found, to arrest, imprison, or bail him by the usual state process, for trial before the federal court, so as to permit the disregard of Code Civ. Proc. § 2032, subd. 2, providing that the justice "must" remand the prisoner, when he is detained by virtue of the final judgment of a court of competent criminal jurisdiction, or of process thereon.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 100.*]

3. EXTRADITION (§ 30*)—WHO IS SUBJECT—CONVICTS—FUGITIVE FROM JUSTICE.

One convicted of an offense against a state, who, before the expiration of that sentence, was delivered to the federal authorities to serve out a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prior sentence, would at the end of that sentence be a fugitive from justice under the United States Constitution, and could be taken by the state under the direct provisions of Rev. St. U. S. § 5278 (U. S. Comp. St. 1901, p. 3597).

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 32; Dec. Dig. § 30.*]

4. COURTS (§ 490*)—COMITY—STATE AND FEDERAL COURTS.

Interference by state courts with federal jurisdiction, or vice versa, is a subject of great delicacy, and any conflict should be carefully avoided.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 490.*]

Application by the People, on the relation of the American Surety Company and Walter Westlake, as administrator of Caroline Barry, deceased, for a writ of certiorari against George W. Benham, as Warden of the State Prison. Writ denied.

William P. Maloney and Henry P. Wilcox, for relators.

John F. Clarke, Dist. Atty., and Robert J. Burrit, Dist. Atty., for respondent.

GAVEGAN, J. This application is addressed to me as a justice of the Supreme Court to transfer and deliver one Frank C. Marrin, who is confined in the state prison at Auburn, N. Y., to his surety or a United States marshal, to be delivered into the United States District Court at Philadelphia, Pa., to answer for the crime of conspiracy against the government, of which he was convicted in that court. The proceeding instituted to accomplish this purpose is by a writ of certiorari; this method having been adopted in place of habeas corpus as a matter of convenience, so as to avoid bringing the prisoner before me.

It appears that in February, 1895, Marrin, who was an attorney in this state, delivered to his client, one Caroline Barry, certain fictitious and forged bonds and mortgages for large sums of money received from her for investment, and absconded from the state of New York He was indicted in Kings county for forgery, and fled from place to place under assumed names, until some time in 1899, when he appeared in the city of Philadelphia, Pa., under the assumed name of Franklin Stone. There, with the moneys of Caroline Barry, he purchased various pieces of property and bonds and mortgages, some in his own name and others in the name of his wife, known as Annie F. Stone. In June, 1905, he was indicted at Philadelphia, Pa., for conspiracy against the United States, and convicted and sentenced to four years' imprisonment in the Eastern Penitentiary in that state. He appealed to the United States Circuit Court of Appeals for the Third Circuit, and while this appeal was pending applied for release upon bail. On June 15, 1908, a bail bond in the sum of $10,000, executed by the American Surety Company of New York and by Marrin, otherwise known as Stone, was given and filed in the said United States court. The condition of the bond is:

"That if he, said Frank C. Marrin, alias Frank E. Stone, alias Franklin Stone, alias Thomas Harper, whose application for a writ of error in the above matter has been allowed and is now pending, shall be and appear at the District Court of the United States for the Eastern District of Pennsylvania, upon the determination of the proceedings in said writ of error and the re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceipt and filing of a mandate or other process or certificate showing the disposition thereof by the United States Circuit Court of Appeals for the Third Circuit, or within five days thereafter, to answer and obey whatever final orders or judgment shall be made in the premises and not depart said court without leave thereof, then this recognizance to be void; otherwise, to remain in full force and virtue."

During the period of his liberty pending this appeal Marrin came within the state of New York, where under the old indictment in Kings county for the forgeries committed by him in 1895, he was tried in the County Court at Kings County, convicted of forgery in the first degree, and sentenced to imprisonment in the state prison at Sing Sing under an indeterminate sentence; the maximum being 20 years and the minimum 15 years. After Marrin's arrest in Kings county he applied to the United States District Court for the Eastern District of New York for a writ of habeas corpus and for an order for his removal to the Eastern District of Pennsylvania. The application was opposed by the district attorney of Kings county, and denied by United States District Judge Chatfield in an opinion reported in Ex parte Marrin, 164 Fed. 631.

On December 8, 1907, Caroline Barry died at Kings county, in this city, and on May 23, 1908, one of the relators, Walter Westlake, was duly appointed her administrator by the Surrogate's Court of Kings County. In the same year Westlake as such administrator commenced an action in equity in the Supreme Court in this state against Marrin and his wife to impress a trust in his favor as such administrator upon the properties in Pennsylvania standing in the name of Marrin and his wife, purchased with the moneys of Caroline Barry, and for a judgment and decree directing a conveyance, bill of sale, and assignment to him of such properties; the amount of moneys embezzled by Marrin being fixed by the judgment, with interest, at $129,629.87. One of the parcels of real property in Pennsylvania purchased with Caroline Barry's money, which was taken in the name of Marrin's wife under the name of Annie F. Stone, was sold by Mrs. Marrin or Stone, and $7,500 of the proceeds in cash was deposited with the American Surety Company of New York by Marrin and his wife, together with other collateral, to indemnify the American Surety Company on the bail bond of $10,000 above mentioned. In the final judgment in the Supreme Court in this state in favor of Westlake in the action in equity referred to Marrin and his wife were directed to execute a bill of sale and assignment of this $7,500 to Westlake as such administrator. Marrin and his wife having failed and refused to make these conveyances, bills of sale, and assignments, and the property being situated in Pennsylvania, Westlake, as such administrator, filed a bill in equity in the United States Circuit Court for the Eastern District of Pennsylvania against Marrin and his wife and against a receiver in bankruptcy of Marrin appointed in the United States court there, and an ancillary receiver of an institution known as the Storey Cotton Company, a swindling concern with which Marrin was connected. On Westlake's bill in equity the judgment and findings of the Supreme Court of the state of New York were made the judgment and findings of the United States Circuit Court for the Eastern District of Pennsylvania, and the

decree in equity in the said United States Circuit Court awarded the properties to Westlake, and likewise ordered and directed Marrin and his wife, otherwise known as Stone, to make conveyances, bills of sale, and assignments of the property in Pennsylvania, including the $7,500 cash deposited as indemnity with the American Surety Company. Pursuant to this decree Marrin and his wife made the conveyances, bills of sale, and assignment.

In the month of February, 1909, the United States Circuit Court of Appeals for the Third Circuit affirmed the conviction against Marrin, who at that time under the sentence of the court in this state was confined in the state prison at Sing Sing. Marrin being called to the United States District Court for sentence under the judgment of affirmance, and not being present, his bail bond of $10,000 was forfeited. In June, 1909, a writ of scire facias on recognizance of bail in the United States District Court for the Eastern District of Pennsylvania was issued against Marrin and against the American Surety Company, one of the relators, by the United States, to recover the $10,000 on the bail bond. A previous application for the relief asked for in this proceeding was made to Mr. Justice Stapleton of this court, but Marrin in the meantime was transferred from Sing Sing Prison to Auburn Prison, and the old application has been withdrawn, and this new one has been made.

The application has been opposed by the district attorney of Kings county. Thus it will be seen that Westlake has a judgment of the United States court and of this court making him the owner of the $7,500 cash of the indemnity put up with the American Surety Company on the bail bond. On the other hand, we have the United States suing the American Surety Company on the forfeited bail bond; and, lastly, Marrin is confined in the state prison at Auburn, and cannot be produced at Philadelphia, so as to obtain a remission of the forfeiture of the bond. Under these circumstances it is alleged by the American Surety Company and by Westlake, as administrator of Caroline Barry, deceased, that in violation of the Constitution of the United States and of the state of New York they are being deprived of their property without due process of law, and they petition this court to deliver up Marrin to the surety as his bail to be surrendered to the United States District Court at Philadelphia to prevent the government from collecting the bond.

They contend that the United States has a paramount right to the custody of Marrin to carry out and execute the sentence of conviction in the federal court in Pennsylvania, and that the orderly administration of justice requires that Marrin should first serve his sentence under that judgment of conviction, that court having first obtained jurisdiction, and that he can then be required to serve out the balance of his judgment of conviction in this state. In May, 1909, when Marrin was called in the United States court at Philadelphia for resentence, he made application to stay the forfeiture of the recognizance, and both the relators in this proceeding appeared and asked for the remission of the forfeiture to the extent of the moneys belonging to Westlake as administrator. This was disposed of in an opinion by the United States District Court, reported in United States v. Marrin et

al., 170 Fed. 476. In that case the court intimated that, had Mrs. Barry herself been the petitioner, it might make a strong case to move the court to a remission of the penalty, but that the claim was only made by her heirs, who were not entitled to the same consideration in the determination of the question that the decedent would have been entitled to receive. I am unable to see what difference there could be in the merit of an application made by the representatives of the decedent and the decedent herself, and probably these remarks, as well as those relating to the alleged action of the surety company at the time of Marrin's application before Judge Chatfield, referred to in 164 Fed. 631, were mere obiter statements of the court, as the court appears to have disposed of the defendant Marrin's application upon different grounds.

The relator the American Surety Company claims that, as the United States court in Philadelphia obtained jurisdiction of Marrin's person before the said court in New York, the federal court retains it, and that, as Marrin was released on bail on which it became surety, Marrin was in contemplation of law in the custody of his bail, and that therefore the surety company as such bail has the right to his custody, and to arrest him anywhere in the United States. In this they appear to be supported by excellent authority. Reese v. United States, 9 Wall. 13, 19 L. Ed. 541; Taylor v. Taintor, 83 U. S. 366, at pages 371 and 372, 21 L. Ed. 287. The surety company also claims that if it is not granted the relief sought it will be put in the position of having no defense to the suit on the bond in Pennsylvania now pending, brought by the United States, although in law it has a right to the custody of Marrin's person. Taylor v. Taintor, 83 U. S. 366, 21 L. Ed. 287. Marrin having been in the custody of the United States court before his conviction here, that court has a paramount right to his custody now. In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103; In re Beavers (D. C.) 125 Fed. 988; United States v. Martin (D. C.) 17 Fed. 150, at pages 154, 155; Section 1030, Rev. St. U. S. (U. S. Comp. St. 1901, p. 721). The rule is firmly established that, where a court first obtains jurisdiction or custody of either a person or property, it retains that jurisdiction until the end, and cannot be deprived of it. In this respect there is no distinction between property taken into the custody of the court and a person taken into the custody of the law. In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103; Beardslee v. Ingraham, 183 N. Y. 411, 76 N. E. 476, 3 L. R. A. (N. S.) 1073.

From this the relators argue that Marrin is not, therefore, detained by "virtue" of a final judgment of a "competent" tribunal, and that the judgment of conviction in the County Court of Kings County loses its virtue as against the paramount right of the United States. It is claimed, therefore, that both the surety company and Westlake will be deprived of their property unless Marrin is arrested and turned over to his bail, to be delivered to the court at Philadelphia to procure a remission of the forfeiture of the bail. Westlake has a judgment of this court, as stated, that the moneys put up with the surety company are his to the extent of $7,500. He also has the judgment of the United States Circuit Court to the same effect. Therefore, as both the

surety company and Westlake were not parties to the criminal action against Marrin in this state, they appear to come directly within the language quoted and approved by the Court of Appeals in this state in Beardslee v. Ingraham, 183 N. Y. 414, 76 N. E. 477, 3 L. R. A. (N. S.) 1073:

"That any person not a party to the suit or judgment whose property has been wrongfully, but under color of process, taken and withheld, may prosecute by ancillary proceedings in the court whence the process issued his remedy for restitution of the property."

Both relators claim that the court in this state has by its process and judgment taken Marrin, who was, in contemplation of law, in the custody of the United States court and in custody of the bail, and has under color of that judgment incarcerated Marrin in the state prison, thereby preventing him from appearing in response to the demand for him in the federal court in Philadelphia, whereby the property of both relators is taken and destroyed in defiance of the judgment of the Supreme Court in this state and of the judgment of the United States Circuit Court in Pennsylvania. Treating this proceeding, therefore, as ancillary to the criminal proceedings under which Marrin was indicted and convicted in this state and taken from his bail or surety, it is said this court may make an order turning Marrin over to his bail, to be delivered to the federal court as indicated. The relators argue that this is the proper court in which to make the application, as it is a court of the state of New York, and that it is more in keeping with the dignity of the state of New York that it should, in recognition of the paramount right of the United States, deliver over to their courts Marrin, who was in their custody, and that by so doing this court will be upholding, not only the paramount right of the United States and their dignity, but also the dignity of this court and its own judgment, and that of the United States Circuit Court.

The return made by the warden of the state prison at Auburn does not traverse any of the allegations in the petition, but sets forth that before the service of the writ, and on or about October 21, 1908, Marrin was duly convicted of the crime of forgery in the first degree at a term of the County Court at Kings county and sentenced to be imprisoned in the state prison at Sing Sing as described, and that he was thereafter received at Sing Sing, and subsequently transferred from there to Auburn Prison, and annexes a copy of the commitment or sentence under which Marrin is now confined in the Auburn Prison. It is conceded that there is no controversy as to the facts, but the learned district attorney claims that the application is made by civilians, that no federal authorities are taking part in the application, and that there is no controversy between the federal and state authorities as to which is entitled to the possession of the prisoner. The learned district attorney also calls the court's attention to the allegation in the petition that the United States, on the occasion when Marrin himself applied to the United States District Court for the Eastern District of New York, to be removed to Philadelphia, instructed the United States district attorney for that district to refuse to join in the application for the removal of Marrin, and that they now refuse to exercise their

paramount right and power to cause the removal of Marrin. Under these circumstances the learned district attorney claims that there is no warrant for this proceeding in law or reason.

These reasons do not appear to me to be a sufficient answer to the application. Indeed, I am of the opinion that the instruction of the United States to the United States district attorney to refuse to join in the application for Marrin's removal at the time the application was made by Marrin before Judge Chatfield, and its refusal to join in any application now, while it is at the same time proceeding against the bail upon the bond, might constitute an equitable defense to the proceedings on the bond (State v. Allen, 2 Humph. [Tenn.] 258), and such an attitude would, it seems to me, be in contravention of all moral principles. What seems to me, however, to be an insurmountable obstacle to the application, is the question of power on the part of this court to grant any relief in the premises, by reason of the provisions of subdivision 2 of section 2032 of the Code of Civil Procedure, which provides that, if it appear on such an application as this that the prisoner is detained by virtue óf a final judgment or decree of a competent tribunal of civil or criminal jurisdiction, the court or judge must forthwith make a final order to remand the prisoner.

The answer of the relators to this is twofold: First, it is claimed that Marrin is not detained by "virtue" of a final judgment of a "competent" tribunal, since that judgment is in contravention of the paramount right of the United States, and hence the bail, to the custody of Marrin, and the right of such bail to take him in any part of the United States; and, secondly, that the refusal to recognize this paramount right, when such refusal operates to destroy a judgment for property duly rendered by the Supreme Court of this state and by the United States Circuit Court in Pennsylvania in favor of Westlake as administrator, is in violation of the Constitution of the United States and of the Constitution of the state of New York. In support of this contention they cite article 6 of the Constitution of the United States, which provides:

"That this Constitution and the *laws of the United States* which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, *shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.*"

It is said that under section 1014 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 716) any justice of the Supreme Court in any part of the state before whom, under section 2017 of the New York Code of Civil Procedure, the application for certiorari comes, is, in fact, a federal judge within the meaning of that section of the United States Revised Statutes, and that under section 1014 of the United States Revised Statutes, which is, of course the supreme law of the land, it is the duty of the Supreme Court justice, proceeding thereunder and applying "the usual mode of process" prescribed by our Code for such cases (which usual mode of process is adopted by section 1014 of the United States Revised Statutes) under section 2036 of the Code of Civil Procedure, to make an order remanding Marrin "to the custody of the officers or the person so entitled," which, the relators

say, is the American Surety Company, the arresting bail. The relators therefore argue that it is the duty of the justice of the Supreme Court to whom this application is made, who for such purpose is to be deemed a federal judge, to turn Marrin over to the custody of the bail, to be delivered to the United States marshal at Philadelphia.

So far as the exercise of any discretion is concerned, the case made by the relators is a clear one, and, were it only a question of discretion, I should certainly grant the application and direct the prisoner to be turned over to the bail to be delivered to the United States court at Philadelphia. I think this would be in accordance with principles of justice, and would comport more with the dignity of the people of this state and of its courts, besides being a recognition of the undoubted paramount right of the federal court; but on the question of power I am not satisfied, in the absence of any express authority on the subject, that I can act as a federal judge within the meaning of section 1014 of the Revised Statutes of the United States. If I were satisfied that a justice of this court was or could be a federal judge for the purpose of such an application as this under section 1014 of the United States Revised Statutes, I would find no difficulty even in holding that the power was not lacking to transfer the prisoner as requested, in spite of subdivision 2 of section 2032 of the Code of Civil Procedure above referred to. The right of the state of New York to vindicate its own judgment of conviction against Marrin for the offense against its laws would in no way be affected by such a direction as is prayed for, because, if Marrin is incarcerated in a federal prison outside of the state of New York, he will be, under the Constitution of the United States and the act of Congress governing such cases, technically a fugitive from justice, and on the expiration of his sentence under the judgment of the federal court he can be again taken by the Governor of the state of New York through extradition proceedings. People v. Hagan, 34 Misc. Rep. 85, 69 N. Y. Supp. 475; Rev. St. U. S. § 5278 (U. S. Comp. St. 1901, p. 3597); Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544; People ex rel. Corkran v. Hyatt, 172 N. Y. 176, at bottom of page 183 and top of page 184, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706; In re Hope, 7 N. Y. Cr. R. 406, 10 N. Y. Supp. 28; Drinkall v. Spiegel, 68 Conn. 441, 36 Atl. 830, 36 L. R. A. 486; People ex rel. Draper v. Pinkerton, 17 Hun, 199.

But I am of the opinion that this application should be addressed in the first instance to the United States District or Circuit Judge within the district in which the Auburn State Prison is located or otherwise. On such application there would be, it seems to me, no doubt whatever of the power of that court to transfer the prisoner. In re James (C. C.) 18 Fed. 853; United States v. Martin (D. C.) 17 Fed. 150. And if that court should entertain any delicacy in making the order, upon the ground that comity required that the application must be first made to the courts of the state of New York, and should hold that this court had the power under the sections of the United States Revised Statutes referred to and otherwise, a new application could be made to this court. The interference of either a state court with federal jurisdiction or of a federal court with state jurisdiction is one of such great delicacy that any conflict must sedulously be avoided, so that each may

carry out its functions within its proper sphere without embarrassment.

Under all the circumstances, therefore, I feel constrained solely on the ground of want of power to deny this application, but without prejudice to the right of the petitioners to make application to the federal court as indicated, and to the renewal of this application in this court in the event of that court holding that the power existed in this court, and that the application should be first made here.