THE PEOPLE OF THE STATE OF NEW YORK ex rel. EVERETT A. HUTCHINGS, Relator, *v.* PETER MALLEN, Warden of the City Prison, etc., and Others, Respondents.

Supreme Court, New York County, February 20, 1926.

Extradition — papers alleging conviction of relator, release on parole and subsequent revocation of parole sufficient to sustain " charge " within meaning of U. S. R. S. § 5278 — determination of Governor granting warrant reviewable in habeas corpus proceeding — relator after conviction of crime of grand larceny in California was sent to New York State for one year by Parole Board of California for work — relator not fugitive from justice.

Papers, upon which the Governor of this State granted a warrant for relator's extradition to California, alleging the commission of the crime of grand larceny in California, relator's release on parole prior to the expiration of his sentence and the revocation of the parole prior thereto are sufficient to sustain a " charge " within the meaning of section 5278 of the United States Revised Statutes.

---

* Since amd. by Laws of 1924, chap. 177; now Tax Law, § 220, subd. 5, as amd. by Laws of 1925, chap. 143.— [REP.

If the determination of the Governor of this State is the result of an erroneous application of the law, said determination is reviewable in habeas corpus proceedings.

However, the relator is not a fugitive from justice within the meaning of section 5278 of the United States Revised Statutes, for the reason that he left the State of California in compliance with a condition in his parole granted by the California State Board of Prison Directors which commanded him to proceed to New York State and there remain for a period of one year in a certain designated employment.

HABEAS CORPUS proceeding to procure release from warrant of extradition.

*Joseph Shalleck,* for the relator.

*Joab H. Banton, District Attorney [Michael J. Driscoll, Deputy Assistant District Attorney,* of counsel], for the respondents.

LEVY, J.   The relator sued out a writ of habeas corpus on the ground that the warrant for his extradition to California was improperly granted by the Governor of this State.   As appears from the papers, the relator was convicted in that State of the crime of grand larceny and after serving nearly two and a half years of the sentence imposed upon him, he was released on parole by the California State Board of Prison Directors, with the direction to immediately proceed to the State of New York for a period of one year, pursuant to an offer of employment by the American Press Association, made through John H. Perry, its president. This occurred on August 8, 1925, and in accordance with the condition of his parole, he proceeded to New York, where he was, and still is, employed by said John H. Perry.   On November 27, 1925, while the relator was living in New York where he had continuously so resided since his arrival here following his release, the Governor of California saw fit to revoke his parole, and upon requisition issued by that official, the Governor of New York allowed the warrant of extradition.

Two points are raised in support of the writ: *First,* that the papers upon which the warrant was granted are insufficient, and *second,* that the relator is not a fugitive from justice.   As to the first objection, if we merely regard the external aspects of the case, the papers in proper form charge the relator with the commission of the crime of grand larceny, and the evidence indicates his conviction thereof and his release on parole.   Such a conviction and the non-expiry of the sentence are certainly sufficient to sustain a " charge," within the meaning of section 5278 of the Revised Statutes of the United States.   The charge certainly remains alive notwithstanding a subsequent conviction thereupon, and is not superseded by it.   (*Matter of Hope,* 10 N. Y. Supp. 28.)   If it

were deemed otherwise, that is to say, abrogated by, or merged so to speak within the conviction following, it would indeed be impossible to extradite a person who had actually been convicted of a crime and thereafter escaped. As to the second point, the status of the relator as an alleged *fugitive* cannot be measured either by a popular conception of the term or by any lexicographic definition, such as, for example, "one who has fled from duty, danger or restraint to a place of safety or of concealment." (Century Dict.) The intent of the Constitution of the United States, article IV, section 2, clause 2, and the Federal statutes enacted in aid thereof, is to insure the presence in the demanding State of the person who has *left* its jurisdiction after the commission of an alleged criminal act. Even though he may have departed without any aim or desire to escape the consequences, and even though he may not have "fled" or "run away," in the usual and ordinary import of these words, he, nevertheless, may be a fugitive. A rather clear statement of this principle is found in *Roberts* v. *Reilly* (116 U. S. 80, 97): "To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offence, he has left its jurisdiction and is found within the territory of another."

This rule has been reaffirmed in later decisions and has been cited verbatim in *Appleyard* v. *Massachusetts* (203 U. S. 222). The motive which induced the departure of the person from the demanding State thus appears quite immaterial. Even if he left that State on legitimate business or for other perfectly good cause, he would, notwithstanding, be deemed a fugitive. (*Matter of White*, 55 Fed. 54.) Did the relator in the instant case *leave* California so as to become a *fugitive* from justice within the meaning of the Federal statutes? The Governor of this State apparently so held, although the minutes of the hearing before him and in evidence before me evince what seemed to be a reluctance on his part to honor the warrant from California, principally because of what developed to be the relator's excellent record in New York. In this connection, the Governor also considered the fact claimed as an alleged violation of the parole, which consisted merely of the complaint that the relator had not entered the employment of the

38

American Press Association but the private service of the president of that organization. Aside from the fact that this may be said to be inaccurate it is, at best, but trifling and inconsequential. As matter of fact, in his plea upon the oral argument before the Governor and this court, it was emphatically urged by the relator that this situation culminates from a political controversy in which the Governor of the State of California and the district attorney of Los Angeles county in that State appear to be engaged. With this, the court, of course, can have no concern, except that it is to be grievously deprecated that the relator, if no other reason exists for his extradition, should be made the unfortunate victim of a condition of events in which, obviously, he played no remotest part.

However this may be, the chief executive of this State evidently acted upon the theory that when the authorities of California revoked the parole, the relator became *ipso facto* a fugitive from justice, regardless of the motives or justice of the revocation, and despite the fact that the person wanted was here not only by the prior consent, but by the very direction of the demanding State. Ordinarily, the question of whether the individual sought is actually a fugitive is one of fact which the Governor of the State, upon whom the demand is made, must decide upon such evidence as he may deem satisfactory. (*Appleyard* v. *Massachusetts, supra.*) How far his determination may be reviewed judicially in habeas corpus proceedings, has not been satisfactorily and adequately determined by the courts. But there can be no doubt that if the Governor's finding of fact is the result of an erroneous application of the law, it is positively reviewable.

The rule that a person to be extraditable must have *left* the jurisdiction after the commission of his crime within the demanding State, implies a leaving by *voluntary* act, although it is immaterial whether he left without any ulterior motive or whether his reason was to escape prosecution. Where a person is *sent* out by the State itself, can it be said that he *left* or technically *fled* the jurisdiction? In *Matter of Whittington* (34 Cal. App. 344) it was held by the very State which is now demanding the relator's surrender that one who leaves the State in the custody of an officer of the law cannot be a fugitive. In that case, a prisoner, while charged with a crime in Texas, was extradited to California for a crime alleged to have been committed in the latter State. He was never tried in California and thereafter the State of Texas made a requisition for him on the charge on which he had originally been held in Texas at the time he was extradited. The courts in California refused the demand on the ground that he was not a fugitive from Texas, because he had not *left* or *fled* from the jurisdiction

of that State, but, on the contrary, had been sent out in custody of the law. In refusing extradition the court said (at p. 347): "We find no cause to dispute the proposition as announced in the authorities cited by respondents, that where a person has committed a crime in one State and is found in another State, he will be presumed to have fled from the jurisdiction of the first. But in this case the prisoner did not leave the State of Texas by any voluntary act of his own. He was taken out of the State against his will and under compulsory process at a time when the State of Texas had him in custody with full right and power to prosecute him for the offense for which it now seeks to have him returned. Not only may it be said that he is not a fugitive because he did not voluntarily leave that State, but because also the State of Texas voluntarily relinquished the jurisdiction of its courts over his person and waived its right to thereafter have him brought back from the California jurisdiction to answer for the same offense."

Whatever difference of opinion there may be as to the propriety of the result in that case, what difference is there in principle as there applied and that involved in the present issue? The distinction made by that court between a person voluntarily departing and one leaving in custody of the law, is certainly a sound one and seems to me controlling. At once, therefore, it may be said that the relator has not "left" or "fled;" hence he is not a fugitive from justice. However, as the principle of law bearing upon the subject is of great public importance and brings up the whole question of the extraditability of a paroled prisoner, it is perhaps necessary and proper to dwell at greater length upon the status of persons whose parole has been revoked and who are absent from the demanding State, in order to determine the relator's position consistently with established principles. As was already observed, a prisoner on parole undoubtedly is still under a charge, within the technical sense of the extradition laws. While thus on parole he may be said to be serving a part of his sentence, with the privilege of enjoying "jail liberties" so called. When he violates the conditions of the parole within the State granting the same unto him, and departs therefrom, he can be in no different situation from an escaped convict and may properly be extradited. Thus in *Hughes* v. *Pflanz* (138 Fed. 980) a released prisoner of Indiana who breached his parole in that State and fled to Kentucky, was held to be extraditable as a fugitive. And in *Drinkall* v. *Spiegel* (68 Conn. 441) a prisoner released from the Elmira Reformatory in New York, on condition that he go to Michigan, but who actually went to Connecticut instead, was deemed a fugitive from

New York. That decision was sustained by the court on the main ground that he was in Connecticut not *because* of his parole, but in violation of it. The determination there might be further supported by the fact that the prisoner really violated his parole within the demanding State and not *outside* of it. He initiated in New York the overt act which led to the breach of his parole by his departure to Connecticut, and although the complete act was not consummated until his arrival in Connecticut, nevertheless, it was set in motion in New York.

Applying an analogous principle to this situation, it becomes obvious that it is not necessary that a criminal shall have done within the demanding State every constituent act necessary to complete the offense. It is sufficient that he does an overt act which is a material step progressively toward accomplishing the crime, and then departs to another State and completes it there. (*Taft* v. *Lord*, 92 Conn. 539.) In the *Drinkall* case the person sought violated the very condition of his release by departing to Connecticut, and thus broke his parole within the State where he had been previously incarcerated, while here, the breach, if any, was in New York and not in the demanding State. A reference to the decision in *Bassing* v. *Cady* (208 U. S. 386) is of value in this discussion, because while it does not deal with a person whose parole was revoked, it furnishes helpful principles for intelligent guidance. In that case a person extradited to New York from Rhode Island returned to the latter State, after an indictment against him in New York was dismissed on technical grounds before trial, and he was set at liberty. Subsequently, he was reindicted and the right of New York to his return from Rhode Island was sustained, because, not having been subjected to technical jeopardy, he was still liable to reindictment upon the " charge " within the meaning of the Federal statutes. It is unnecessary to decide whether the *Bassing* case would authorize extradition of a person who had been released on parole, without any direction to depart to another State, and whose parole had been revoked while in the latter State. On the other hand, it cannot be construed to estab-lish the proposition that a departure from the State under the circumstances occurring in the instance of this relator necessarily constitutes him a fugitive from justice. What it does determine in this respect is, that although a person leaves a given State with its tacit consent or acquiescence, he may nevertheless be a fugitive and subject to extradition upon a subsequent demand. This situation, evidently, is quite different from the instant case, where the person requisitioned came to New York at the express direction of the State of California. His departure from that

State was not his voluntary act. He was constructively just as much under the escort of California when leaving as was the prisoner in the *Whittington Case (supra)*, who left in the physical custody of an officer of the law. In fact, he never "fled" from or "left" California, and in that respect very likely still is under what may be termed, paradoxically perhaps, the moral jurisdiction of that State. His presence in New York is, so to speak, in expiation and completion of his sentence. While there may be no doubt that the State of California has the right to revoke his parole and thus change the manner in which he is to complete the sentence, it is powerless to enforce his extradition even for this purpose, by reason of its failure to show that he is a fugitive from justice.

So, entirely apart from considerations of humaneness, I cannot hold that so far as the charge of larceny is concerned, the relator is subject to extradition, nor, on the other hand, is he a fugitive under the somewhat doubtful claim of having procured his parole by fraud or misrepresentation as imputed by those seeking his extradition. There is no competent record before me of such a charge and, consequently, he cannot be held as one who has fled to escape the consequences of this offense, if there be such a crime in California.

Accordingly, the writ is sustained and the relator is ordered discharged.