No. 32,847

In re Petition of JOE L. MARTIN for Writ of Habeas Corpus.

No. 32,850

JOE L. MARTIN, *Appellant,* v. THE STATE OF TEXAS, *Appellee.*

(52 P. 2d 1196)

908

Joe L. Martin, pro se.

Clarence V. Beck, attorney general, and J. S. Parker, assistant attorney general, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff has filed in this court his application for a writ of habeas corpus. He has also appealed from a judgment of the district court of Leavenworth county denying his application in that court for a writ of like nature growing out of the same facts. ·

In November, 1933, the petitioner was arrested by state authorities in Tarrant county, Texas, and about March 18, 1934, was tried and sentenced to a term of nine years in the Texas penitentiary. Under some arrangement not clear from the record, he was tried in the United States district court of Texas on a charge of conspiracy to rob the United States mail; on April 4, 1934, he was found guilty; on April 7, 1934, he was sentenced to a term of two years in the federal penitentiary at Leavenworth, and on May 9, 1934, he was removed from Texas to the federal penitentiary. Owing to certain credits given the petitioner, his time at the federal penitentiary expired October 15, 1935, and he would then have been at liberty, but he was apprehended by the sheriff of Leavenworth county and held under a warrant from the state of Texas charging a violation of the criminal laws of that state, and for an offense different from that on which he was tried and convicted in the Texas state court in March, 1934. When extradition papers were presented to the governor, the petitioner was not represented, and the requisition of the state of Texas was honored. The petitioner then filed his application in the Leavenworth county district court, and a little later his original application in this court.

The petitioner's contention is that having been surrendered by the Texas authorities to the United States, and having been tried in the United States district court and convicted, and having been taken from the state of Texas to the state of Kansas by federal officers against his will and without his consent, and not having been within the state of Texas since his release from the federal penitentiary, he is not a fugitive from justice and has a safe asylum in Kansas.

Although there are authorities to the contrary, the general rule is where one commits an offense in the demanding state and thereafter goes or is taken into another or asylum state, his motives in leaving or the reasons why he has left the demanding state are immaterial. (See 11 R. C. L. 731; 25 C. J. 258; 2 Moore on Extradition, p. 929, and Annotation in 13 A. L. R. 415.)

Interstate rendition of fugitives from justice is based upon the constitution of the United States (U. S. Const., art. 4, § 2, cl. 2) and the federal statutes (18 U. S. C. A. §§ 662, 663). The term "fugitive from justice" was defined by the supreme court of the United States in *Roberts v. Reilly*, 116 U. S. 80, 29 L. Ed. 544, 6 S. Ct. 291, in the following language:

"To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another." (p. 97.)

And to the same effect, see *Appleyard v. Massachusetts*, 203 U. S. 222, 51 L. Ed. 161, 27 S. Ct. 122, 7 Ann. Cas. 1073.

Petitioner relies almost wholly on *In re Whittington*, 34 Cal. App. 344, 167 Pac. 404. There the petitioner was arrested in Texas for an offense committed there. While in custody, a requisition from the state of California was honored by the governor of Texas, and the petitioner was taken to California, where the charge against him was not pressed and was either dismissed or otherwise disposed of, whereupon the governor of Texas made requisition upon the governor of California to have the petitioner returned to Texas for trial on the original charge. The petitioner then sought his freedom under an application for writ of habeas corpus. In its opinion allowing the writ, that court said:

"We find no cause to dispute the proposition, as announced in the authorities cited by respondents, that where a person has committed a crime in one state, and is found in another state, he will be presumed to have fled from the jurisdiction of the first. But in this case the prisoner did not leave the state of Texas by any voluntary act of his own. He was taken out of the state against his will and under compulsory process, at a time when the state of Texas had him in custody with full right and power to prosecute him for the offense for which it now seeks to have him returned. Not only may it be said that he is not a fugitive because he did not voluntarily leave that state,

but because also the state of Texas voluntarily relinquished the jurisdiction of its courts over his person and waived its right to thereafter have him brought back from the California jurisdiction to answer for the same offense. In an argumentative way the case of *In re Hess (Hess v. Grimes)*, 5 Kan. App. 763, (48 Pac. 596), is authority for the conclusion last announced." (p. 347.)

Even though the California court may have disposed correctly of the application, there is material difference in the facts. There the state of Texas, in effect, sent the prisoner out of the state, and then sought to return him for trial on the identical offense for which it first caused his arrest and commitment. The Kansas case cited in that opinion has little, if any, application to the case before us.

The Whittington case, although frequently cited, has rarely, if ever, been followed.

In *People v. Mallon*, 218 N. Y. S. 432, a prisoner in California was paroled from a state prison with directions to go to New York, where he was to be employed. He accepted the parole and went to New York. While in New York his parole was revoked, and it was sought to return him to California under extradition process. He sought his release on a writ of habeas corpus on the ground he was not a fugitive from justice. The court reviewed the authorities generally and discussed particularly the question of whether he could be a fugitive when he left the demanding state with its consent, citing many decisions holding that in similar circumstances the paroled prisoner was a fugitive. The court said:

"The only case cited which holds differently from these cited hereinbefore is *In re Whittington*, 34 Cal. App. 344, 167 P. 404, which held the question of whether the accused had left the demanding state of his own volition, or under compulsion of legal process, could be inquired into. This holding is opposed to the uniform current of the decisions of the United States supreme court, which hold that there can be no inquiry into the motives which caused an alleged fugitive to depart from one state and take refuge in another; there is no discretion allowed, no inquiry into motives. *Drew v. Thaw*, 235 U. S. 432, 35 S. Ct. 137, 59 L. Ed. 302." (p. 441.)

and directed the prisoner be delivered for extradition.

In *People v. Meyering*, 358 Ill. 442, 193 N. E. 475, it was held that one arrested in Illinois was not entitled to his discharge because not a fugitive from Wisconsin, where, having committed a crime in Wisconsin, he was surrendered by the county sheriff there to federal authorities, who took him to Illinois, then back to Wisconsin, then to Minnesota and then back to Illinois, it being said:

"It is not necessary that a person who has committed a crime against the laws of a state should leave that state to avoid prosecution, anticipated or

begun, in order to be considered a fugitive from justice. In whatever manner or for whatever reason he may have gone into the asylum state he is regarded in law as a fugitive from the justice of the demanding state." (p. 445.)

The petitioner also calls our attention to *State, ex rel. Shapiro, v. Wall,* 187 Minn. 246, 244 N. W. 811, 85 A. L. R. 114, where the relator was indicted in Illinois for an offense. He was then indicted by the federal court there, tried, convicted and sent to Leavenworth. While there in prison, he was returned to Illinois and tried and convicted in the state court and returned to Leavenworth to complete his first sentence. Upon his discharge from the federal prison, he was arrested on an extradition warrant from Illinois. He then brought habeas corpus proceedings in the probate court of Leavenworth county, Kansas, and was discharged on the theory he was not a fugitive from justice. On appeal to the Leavenworth district court a like result was had. No appeal to the supreme court was taken. He then removed to Minnesota where he was arrested upon a rendition warrant and again sued out a writ of habeas corpus, urging that he was not a fugitive from justice and that the decision of the Kansas court was *res judicata.* The trial court held against the relator, who appealed to the supreme court, which, after reviewing authorities, said:

"It is true that these cases do not involve fugitives who have been forcibly taken from the jurisdiction of the demanding state, and that *In re Whittington,* 34 Cal. App. 344, 167 Pac. 404, holds that such a person is not a fugitive from justice; but we believe that the manner of leaving the demanding state is as immaterial as is the purpose of leaving, and that the framers of the constitution could not have intended to create a permanent asylum for a criminal if he was taken out of the demanding state by force and against his will. If his leaving the state under such circumstances that it would not ordinarily be called a flight makes no difference in the eyes of the supreme court, or if his lack of consciousness that he has committed an offense within the demanding state makes no difference, we cannot see that the manner of his leaving should be controlling in such a matter. He has left the jurisdiction of the demanding state and is found in the territory of another state whence he refuses to return to satisfy the charges made against him. We believe that this satisfies the definition of a fugitive from justice under the decisions of the supreme court and under our own decision. We think the manifest purpose of the constitutional provision and of the acts of congress in furtherance thereof is to effect the return of absentee criminals or those charged with crime, and that these provisions should receive a liberal construction to carry out that manifest purpose which, in our view, includes a design to prevent the frustration of criminal procedure by the departure of a person in any manner from the jurisdiction where he is charged with crime." (p. 249.)

and held:

"A prisoner who has been removed from the demanding state by federal authorities is nevertheless a fugitive from justice in an asylum state and must be delivered to the demanding state upon proper extradition process." (Syl. ¶ 1.)

We are not disposed to follow the reasoning and holding of *In re Whittington,* supra. It is against the great weight of authority. In the case before us there is no showing as to the circumstances under which the United States was permitted to prosecute its action against the petitioner. After he was convicted and sentenced in that court, he was taken to the designated penitentiary at Leavenworth. It may be that it was against the petitioner's wish, and it may also be that rather than serve a nine-year sentence in the Texas state penitentiary he preferred to serve a two-year sentence in the federal penitentiary at Leavenworth, hoping upon expiration of the two-year sentence to be free. There is no showing that petitioner was pardoned by the governor of Texas previous to his removal to Kansas by the federal authorities; it is claimed only that the mere fact he was tried in the federal court after being convicted in the state court amounted to a waiver to further prosecute him on a pending indictment in the state court of Texas. That result certainly does not follow, for had he been confined in Texas under the federal sentence, upon his release the state authorities could have held him for trial on the indictment on which he had not been tried. As we view the matter, to constitute petitioner a fugitive from justice, it was not necessary to show he had voluntarily fled from the state of Texas to avoid prosecution on an outstanding indictment. Unless he was released from further prosecution by pardon of the governor of that state, or as a necessary consequence of some requirement of law, the cause of his leaving and the manner in which he left were immaterial, if in fact an offense had been committed within the demanding state and he kept himself out of that state. There is no showing that he ever was taken from the state of Texas under such circumstances that that state could not at an appropriate time demand his return.

The burden was on the petitioner to show his right to discharge from official custody, and in that he has failed.

The writ of habeas corpus applied for in this court is denied. The action of the trial court in denying the writ applied for in the district court is affirmed.