[Crim. No. 5688. Second Dist., Div. One. July 13, 1956.]

In re DONALD LEE FEDDER, on Habeas Corpus.

Ernest L. Graves for Petitioner.

S. Ernest Roll, District Attorney (Los Angeles), and Jere J. Sullivan, Deputy District Attorney, for Respondent.

FOURT, J.—Donald Lee Fedder, hereinafter referred to as the petitioner, has petitioned this court for a writ of habeas corpus, setting forth, among other things, that he is imprisoned and restrained of his liberty by the sheriff of Los Angeles County at the county jail in Los Angeles pursuant to a warrant for the interstate rendition of petitioner.

He contends that the detention is illegal in that the affidavit of the sheriff of Teton County, Idaho, is insufficient as a matter of law to state facts sufficient for the issuance of the warrant, and that petitioner is not a fugitive from Idaho and has not fled Idaho, as those terms are used or defined in Penal Code, section 1548.2, or within the definition of such terms under the Constitution of the United States, in that Idaho unconditionally surrendered petitioner pursuant to a request from the governor of Utah while petitioner was under conviction and sentence in Idaho, and without the consent and over the objection of petitioner, and further that Idaho, under the circumstances, waived its jurisdiction over petitioner, and has waived its right, or is estopped thereby, to now assert that petitioner is a fugitive from Idaho, or has fled Idaho.

The facts are substantially as follows: Petitioner was, on or about October 28, 1950, in the county of Weber, Utah, charged with committing a felony in violation of certain provisions of the law of Utah, in that he, for his own gain, received stolen property. On February 28, 1951, petitioner pleaded guilty to the charge. He made an application for probation, and on March 19, 1951, signed an agreement setting forth the terms of probation and accordingly, on April 30, 1951, was placed in the custody and under the supervision of the Utah State Adult Probation Department.

Part of the terms of probation were that petitioner would make regular reports to the agent in charge each month; that he would not leave the state without first obtaining permission from the agent in charge; that he would obey all laws and refrain from illegal transactions, and would make restitution.

Imposition of sentence was continued from time to time. On November 19, 1951, one of the dates to which the matter was continued, the petitioner failed to appear and has failed to appear at all times thereafter. The matter was continued from date to date thereafter, until on December 26, 1951, a bench warrant was issued for his arrest. Bail was set in the sum of $5,000.

An order to show cause why the probation should not be revoked by the court and why the petitioner should not be committed forthwith to the Utah state prison upon the affidavit filed by the probation officer, was issued June 2, 1952, returnable June 30, 1952.

The petitioner did not personally appear, but entered a motion to quash the order on several grounds, among them

being that there was no formal adjudication of guilt ever made, that no written order pronouncing sentence was ever made, and that the court did not prescribe any of the conditions for probation. The court found that the probation agreement had been violated in that petitioner had left the state of Utah without permission; had failed to report as agreed upon and had made no restitution. The court found the petitioner guilty and set July 7, 1952, for sentencing. The petitioner appealed the cause to the Supreme Court of Utah, which court sustained the conviction and ruled against all of petitioner's contentions. That decision is reported in 1 Utah 2d 117 [262 P.2d 753], dated October 30, 1953.

On or about January 9, 1953, an amended complaint was filed in the probate court of Teton County, State of Idaho, wherein the State of Idaho, as plaintiff, charged the petitioner, as defendant, with burglary in the first degree. The complaint set forth, among other things, that the defendant, on or about December 29, 1952, committed a burglary in the first degree in Teton County, Idaho; that the defendant was a persistent violator of the law in that on or about March 19, 1940, he was convicted of burglary in the second degree in the district court in Lincoln County, Nevada, and that on or about April 10, 1941, he was convicted of burglary in the first degree in the District Court of the Third Judicial District, County of Ada, State of Idaho. That case was set for trial on August 31, 1953. Petitioner, on August 28, 1953, moved for a continuance and it was granted. The case was then set for trial on September 3, 1953. At the time fixed for the trial the petitioner did not appear and the bail was forfeited. Petitioner's counsel contended at the time that petitioner was unable to be present for trial as he was in California, suffering from injuries received in an automobile accident. The court later ordered the bail forfeiture set aside upon certain conditions, and the cause was continued to October 20, 1953, for trial. A trial was had before a jury and on October 21, 1953, a verdict of guilty of burglary in the first degree was returned. Petitioner was duly arraigned for judgment on November 2, 1953, and sentenced to the state prison of Idaho for a term of not more than 15 years.

The defendant was released from custody to appeal the conviction upon giving a bail bond in the sum of $3,000. On the appeal the Supreme Court of Idaho entered its decision on June 29, 1955, affirming the conviction. That case is reported in 76 Idaho 535 [285 P.2d 802].

The authorities of Utah finally located the petitioner in Idaho, and on or about January 26, 1954, the district attorney of Weber County, Utah, made an application to the Governor of Utah for a requisition upon the Governor of Idaho for the petitioner. In support of the application he set forth the necessary documents and instruments and stated that application had been made in June, 1952, and that the defendant appeared specially through his attorney to resist extradition; that the cause was appealed to the Supreme Court of Utah, and decided against the defendant; that the defendant was in Idaho Falls, Idaho, and was a fugitive from justice.

On March 10, 1954, the Governor of Idaho directed the sheriff of Bonneville County, Idaho, to arrest the defendant and deliver him to the agent of Utah. The petitioner was arrested March 16, 1954. He was released on a $1,000 bail bond. On April 14, 1954, the petitioner surrendered himself into the custody of the sheriff for the purpose of his hearing on a writ of habeas corpus to test and determine the validity of the extradition proceedings. The cause was continued from time to time, and on September 8, 1954, the application for the writ of habeas corpus was denied. A stay of execution until September 17, 1954, was granted and the bond was continued for such stay period.

The petitioner was apparently taken back to Utah and served a term for the offense of receiving stolen property and was thereafter released by the authorities of Utah. On July 20, 1955, the decision on petitioner's appeal to the Supreme Court in Idaho became final.

An order of recommitment was made April 27, 1956, by the court in Idaho, wherein it was recited that the petitioner was convicted and sentenced; that he was released to appeal said conviction by filing a bail bond in the sum of $3,000; that the Supreme Court affirmed the decision; that the defendant failed to present himself for execution of the judgment; that the sheriff made demand upon the sureties of the bail bond to produce the defendant, but they have been unable to do so and have, in writing, authorized the sheriff to have the defendant arrested that the execution of the judgment might be made; that the bail be forfeited and that any sheriff of the State of Idaho arrest the defendant.

On May 29, 1956, the Governor of Idaho signed a rendition demand for petitioner, addressed to the Governor of the State of California. On June 18, 1956, petitioner was ordered

remanded to the custody of the sheriff of Los Angeles County pursuant to a governor's extradition warrant and was by said sheriff ordered to be delivered to the agent of the State of Idaho 48 hours hence.

We will consider first petitioner's contention that the affidavit of the sheriff of Teton County, Idaho, is insufficient. In one affidavit the sheriff stated that he could not serve the order of recommitment because the petitioner could not be found in the county of Teton and State of Idaho. In another affidavit he stated that after he received the order he immediately commenced an investigation as to the whereabouts of petitioner and he learned that the petitioner had left the State of Idaho. We are of the opinion that the documents and affidavits were sufficient under the circumstances and were in proper order.

Next considering the claim that petitioner is not a fugitive from Idaho, Penal Code, sections 1548.2 and 1549, are set forth in the footnote herein.[1] Section 1548.2 is substantially

---

[1] "§1548.2. [Form and requisite allegations of demand: Necessary accompanying documents: Form: Authentication.] No demand for the extradition of a person charged with crime in another State shall be recognized by the Governor unless it is in writing alleging that the accused was present in the demanding State at the time of the commission of the alleged crime, and that thereafter he fled from that State. Such demand shall be accompanied by a copy of an indictment found or by information or by a copy of an affidavit made before a magistrate in the demanding State together with a copy of any warrant which was issued thereon; or such demand shall be accompanied by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding State that the person claimed has escaped from confinement or has violated the terms of his bail, probation or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that State; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be certified as authentic by the executive authority making the demand."

"§ 1549. [Agreement for return to this state of person imprisoned or held in another: Conditions: Surrender of person who left other state involuntarily.] When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another State, the Governor of this State may agree with the executive authority of such other State for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other State, upon the condition that such person be returned to such other State at the expense of this State as soon as the prosecution in this State is terminated.

"The Governor of this State may also surrender on demand of the executive authority of any other State any person in this State who is charged in the manner provided in section 1548.2 of this code with having violated the laws of the demanding State even though such person left such demanding State involuntarily."

section 3 of the Uniform Criminal Extradition Act adopted in this state in 1937. Section 1549 is substantially section 5 of the Uniform Act. In the commissioners' prefatory notes to the Uniform Act, it is stated (9 U.L.A. 169-170):

"The Federal Constitution, adopting substantially the language of the earlier articles of Confederation between the thirteen colonies provides, in section 2 of Article IV, U.S.C.A. Const., art. IV, § 2, cl. 2, that 'A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime.'

"But notwithstanding the clarity of the above provision, the federal Congress, acting upon an opinion of Attorney General Randolph, decided in 1793 that the section of the constitution was not self-executing, chiefly because it provided no machinery for its execution, and passed in 1793 an act which has been brought forward as sections 5278 and 5279 of the U.S. Revised Statutes of 1875, 18 U.S.C.A. §§ 662, 663 [18 U.S.C.A. §§ 3182, 3194, and 3195], . . .:

"The above section of the Constitution and the above federal law form the basis of the interstate extradition of fugitive criminals in all the states. The Constitution creates the right to demand the fugitive, and the federal law creates the machinery, and they thus distinguish interstate extradition from international extradition which rests entirely upon treaties and is defined by treaty limitations."

Following the preparation of the Uniform Act in 1926, various amendments were made to section 5 thereof. The commissioners' notes recite (9 U.L.A., *supra*, 172):

"Section 5 contains two paragraphs, added by the Conference in 1936. The second of these paragraphs authorizes the extradition of a criminal who, under the decisions of some states, has been held not to be a 'fugitive' because his departure from the state in which the crime was committed was under compulsory process. The first paragraph is intended to cover the situation of a man who is wanted for trial in one state and who is already serving a prison sentence in another state."

And further states (at p. 191): ". . . The reason for the second paragraph of this section lies in the fact that there is a conflict in the decisions upon the question whether a person who has been removed from a state under the com-

pulsion of the authority of that state can be classed as a 'fugitive' from that state so that his return can be secured through extradition proceedings. See *In re Whittington,* 1917, 167 P. 404, 34 Cal.App. 344; *Hart* v. *Mangum,* 1917, 91 S.E. 543, 146 Ga. 497; *People ex rel. Hutchings* v. *Mallon,* 1927, 157 N.E. 842, 245 N.Y. 521; *State ex rel. Shapiro* v. *Wall,* 1932, 244 N.W. 811, 187 Minn. 246 [85 A.L.R. 114].''

■ One of the purposes of the extradition statutes is to prevent criminals from escaping punishment. ■ State legislation on the subject matter is valid only to the extent to which it aids and is not inconsistent with the federal Constitution and statutes. ■ The Constitution guarantees no right of asylum to any person who has committed a crime in one state and fled to another. As was said in *Brewer* v. *Goff,* 138 F.2d 710, at page 711:

''The Constitutional provision and the procedural statute were intended to provide a summary executive proceedings, by the use of which the closely associated states of the union could promptly aid one another in bringing to trial persons accused of crime in one state, but found in another beyond the reach of the state where the crime was committed. To this end, the courts have given the Constitution and statute a liberal construction in order to effectuate and expedite the administration of justice in the several states. *Biddinger* v. *Commissioner of Police,* 245 U.S. 128 [38 S.Ct. 41, 62 L.Ed. 193], . . .; *Appleyard* v. *Massachusetts,* 203 U.S. 222 [27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073], . . .; *Lascelles* v. *Georgia,* 148 U.S. 537 [13 S.Ct. 687, 37 L.Ed. 549], . . .; *Roberts* v. *Reilly,* 116 U.S. 80 [6 S.Ct. 291, 29 L.Ed. 544], . . .; . . ..''

■ In the case at hand the petitioner was convicted of a crime, and the judgment remains unsatisfied, and for the purposes of this proceeding, he may be deemed to be a person charged with a crime within the meaning of the constitutional and statutory terms. (*United States ex rel. Faris* v. *McClain,* 42 F.Supp. 429.)

■ The general rule is set forth in 35 Corpus Juris Secundum 327, where it is said: ''The mode or manner of a person's departure from the state generally does not affect his status as a fugitive from justice; so the fact that a person's departure was involuntary or under legal compulsion will not, under most authorities, preclude his extradition as a fugitive from justice (Ga.—*Brown* v. *Lowry,* 195 S.E. 759, 185 Ga. 539. . . . N.Y.—*People ex rel. Hutchings* v. *Mallon,* 218 N.Y.S. 432, 218 App.Div. 461, . . ., reversing

214 N.Y.S. 211, 126 Misc. 591, . . . and affirmed 157 N.E. 842, 245 N.Y. 521. . . . Prisoner removed by federal authorities from demanding state is subject to extradition from asylum state as a fugitive from justice. U.S.—*Spencer* v. *Hamilton,* C.C.A.Kan., 12 F.2d 976. Ga.—*Scheinfain* v. *Aldredge,* 12 S.E.2d 868, 191 Ga. 479. . . . Ill.—*People ex rel. McFadden* v. *Meyering,* 193 N.E. 475, 358 Ill. 442. . . . Kan. —*Ex parte Martin,* 52 P.2d 1196, 142 Kan. 907. . . . Minn.— *State* v. *Wall,* 244 N.W. 811, 187 Minn. 246, 85 A.L.R. 114. . . . N.J—*Ex parte Cohen,* 146 A. 423, 104 N.J.Eq. 560. . . . N.Y.—*People* v. *Benham,* 128 N.Y.S. 610, 71 Misc. 345. . . . Wash.—*Ex parte Anthony,* 87 P.2d 302, 198 Wash. 106 . . .), although there is authority to the effect that a person leaving a state in the custody of an officer is not a fugitive. (Cal.— *In re Whittington,* 167 P. 404, 34 Cal.App. 344.)''

In the Whittington case the defendant was charged with a crime in Texas and was delivered to California in extradition proceedings to answer a charge in this state. Later, after the defendant was brought to this state, the authorities decided not to prosecute. Texas then sought to extradite him for trial of the crime committed in Texas. In habeas corpus proceedings the California court ordered his release upon the grounds that he left the state through no voluntary act of his own and that the actions of Texas in delivering him to California, upon California's demand, constituted a waiver of jurisdiction over him. This case was decided in 1917, and was cited in *In re Marzec,* 25 Cal.2d 794 [154 P.2d 873], and in *In re McBride,* 101 Cal.App. 251 [281 P. 651], and distinguished in both cases. The case is clearly contrary to the weight of authority and has been criticized in *Ex parte Martin,* 142 Kan. 907 [52 P.2d 1196]; *State* v. *Wall,* 187 Minn. 246 [244 N.W. 811, 85 A.L.R. 114]; *People ex rel. Hutchings* v. *Mallon,* 126 Misc. 591 [214 N.Y.S. 211], rev'd. 218 App.Div. 461 [218 N.Y.S. 432], affd. 245 N.Y. 521 [157 N.E. 842]; *Ex parte Anthony,* 198 Wash. 106 [87 P.2d 302]; also in *Moulthrope* v. *Matus,* 139 Conn. 272 [93 A.2d 149], and in *United States ex rel. Moulthrope* v. *Matus,* 218 F.2d 466, at page 468, the court said in reference to the Whittington case, it ''seems not to have been generally followed.''

The power and duty of determining whether a sufficient showing has been made to warrant the extradition of the person demanded rests, in the first instance, on the governor of the asylum state. Two questions are presented to the governor: (1) Is the person demanded substantially charged

by an indictment or affidavit properly certified with the crime against the laws of the state from whose justice it is alleged that he has fled? (2) Is he a fugitive from justice from the state demanding him? The first is a question of law, while the second is a question of fact. (35 C.J.S. 339.)

The governor's judgment thereon is not subject to judicial impeachment by habeas corpus unless it conclusively appears that the person sought to be extradited could not be a fugitive from justice under the law. (*Brewer* v. *Goff, supra*, 138 F.2d 710, 712; *Roberts* v. *Reilly*, 116 U.S. 80 [6 S.Ct. 291, 28 L.Ed. 544]; *Appleyard* v. *Massachusetts*, 203 U.S. 222 [27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073]; *Hyatt* v. *New York ex rel. Corkran*, 188 U.S. 691 [23 S.Ct. 456, 47 L.Ed. 657].) For, as it is said in 35 Corpus Juris Secundum at page 345, "In the absence of proof to the contrary, it will be presumed that the governor acted in conformity with law in the issuance of his warrant, and the warrant or the recitals therein are prima facie evidence of the existence of the jurisdictional facts, although it is not conclusive proof of compliance with statutory requirements."

It was appropriately set forth in *Appleyard* v. *Massachusetts, supra,* at pages 227-228, as follows: "So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he consciously fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding state. A person charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the state,— no matter for what purpose or with what motive, nor under what belief,— becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the state from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several states,— an object

of the first concern to the people of the entire country, and which each state is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the states. And while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state.''

Also, the Supreme Court of this state has taken the same view, as stated in *In re Murdock* (1936), 5 Cal.2d 644, at page 648 [55 P.2d 843], where it is said:

''It has long been understood that for the purposes of extradition between states it is immaterial what motive induced the departure from the state where the offense was committed. (*Drew* v. *Thaw*, 235 U.S. 432, 439 [35 S.Ct. 137, 59 L.Ed. 302], and cases cited.) It is sufficient under the federal Constitution (art. IV, § 2) if he be found in the state where the warrant is issued. In *Roberts* v. *Reilly,* 116 U.S. 80, 92, 96 [6 S.Ct. 291, 29 L.Ed. 544], it is said: 'To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another.' ''

It is enough, if after committing a crime in one jurisdiction, the perpetrator departs and is later found in another. (*Hogan* v. *O'Neill,* 255 U.S. 52, 56 [41 S.Ct. 222, 65 L.Ed. 497].)

It has frequently been held that even if the prisoner was forcibly removed from the state by federal authorities he is still a fugitive from justice.

The Congress and the legislatures of the various states adopted extradition laws to eliminate the respective boundaries of the states as far as possible to the end that each state or the federal government could reach out and bring to trial and justice offenders against its laws from any part of the country. In adopting section 1549 of the Penal Code the legislature never intended that California should be a haven

and asylum for those in the position of the petitioner herein.

We believe that the principles of law here related are the rules which should be followed in this case. We are, therefore, of the opinion that the proceedings are sufficient, that the petitioner is a fugitive from Idaho and that Idaho, by honoring the extradition request of Utah, is not estopped to assert that petitioner is a fugitive.

The writ heretofore issued is discharged.

It is ordered that after 30 days have elapsed from and after the filing of this opinion, the sheriff of Los Angeles County, to whose custody the petitioner is remanded, shall deliver him into the custody of the state agent or agents of the State of Idaho.

White, P. J., and Nourse (Paul), J. pro tem.,* concurred.