IN THE MATTER OF PETITION FOR HABEAS CORPUS
BROUGHT BY PERCY P. KING.

Hancock.    Opinion, October 12, 1942.

*Norman Shaw,* for the petitioner.

*Edward J. Harrington,* Assistant Dist. Atty., New Bedford, Mass., for the Commonwealth of Massachusetts.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, JJ.

HUDSON, J.

HABEAS CORPUS. On April 4, 1942, the Governor of Maine honored the requisition of the Governor of Massachusetts for the surrender of the petitioner, Percy P. King, as a fugitive from justice of that Commonwealth and issued a warrant for his delivery to an agent thereof. On the 22nd of said April the petitioner applied to a justice of our Superior Court for the issue of a writ of habeas corpus. Upon hearing, he was denied discharge. Exceptions were taken to "the various rulings of the presiding Justice" which the petitioner now presents to us.

EXCEPTION 1. Sec. 3 of Chap. 150, R. S. 1930 (Uniform Criminal Extradition Act) was amended by Sec. 1, Chap. 10, P. L. 1939, to read in part as follows:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 6, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state . . . ."

This exception is based on the petitioner's claim that the

demand contained no such allegation. Unquestionably the demand mentioned in the statute is that made by the governor of the demanding state upon the governor of the asylum state and this was not made a part of the record. So the petitioner has failed to prove lack of such an allegation.

EXCEPTIONS 2, 3, and 4 are related so closely that they may be considered together. They are that the evidence failed to show that the petitioner was "present in the demanding state at the time of the commission of the alleged crime and thereafter fled," that "the Petitioner was not a fugitive from justice," and that he "could not be a fugitive from justice according to the evidence as he could not have committed the crime alleged in the indictment."

It appears that at a term of the probate court held at Fall River, Massachusetts, on the first day of November, 1935, a divorce from the bond of matrimony was decreed to the petitioner's wife, Eva E. King, to wit, Eve E. King, that she was given the care and custody of their three minor children, and that he, the libellee, was ordered to pay her the sum of $35.00 each and every week thereafter for her support and that of their three minor children until further order.

The Kings were married in Massachusetts in 1920. Afterwards they lived in Rhode Island and in Massachusetts. He was born in Steuben in this State. Following the divorce he returned to his native town, where he now resides. Both before and since leaving Massachusetts he paid in accordance with the order until March, 1941. Only once since the divorce, however, until his default in March, 1941, was he in that State, namely, on January 15, 1941, when he made a special trip to Fall River to confer with his former wife's attorney in regard to a possible reduction of the amount ordered to be paid. Remaining there not more than two days, he immediately returned home.

At a term of the Superior Court holden at Fall River on the first Monday of November, 1941, the petitioner was indicted. The indictment contained two counts, the first alleging that

the accused, "on or about the twelfth day of March in the year of our Lord one thousand nine hundred and forty-one, did, without just cause, desert his wife, Eve E. King, and minor children, Orlando King, Harold King, and Frances King by going into another state and leave them without making reasonable provision for their support," and the second, that he, "being of sufficient ability, did unreasonably neglect and refuse to provide for the support and maintenance of his wife, Eva E. King and minor children. . . ."

This indictment was based on Chap. 273, Sec. 1, in General Laws of Massachusetts, which read in part:

> "Any husband or father who without just cause deserts his wife or minor child, whether by going into another town in the commonwealth or into another state, and leaves them or any or either of them without making reasonable provision for their support, and any husband or father who unreasonably neglects or refuses to provide for the support and maintenance of his wife or minor child, and any husband or father who abandons or leaves his wife or minor child in danger of becoming a burden upon the public, . . . shall be punished by a fine of not more than two hundred dollars or by imprisonment of not more than one year, or both. . . ."

Whether the petitioner committed the crime alleged in the indictment by desertion of his children without making reasonable provision for their support and whether, being of sufficient ability, he did unreasonably neglect and refuse to provide for their support, we neither consider nor pass upon. The charge is that he did. Whether he did or not is for the Massachusetts court to determine. Under our statute, Chap. 150, Sec. 2, R. S. 1930, ". . . it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person *charged* in that state with treason, felony, or other crime, who has fled from justice and is found in this state." (Italics ours.) The truth of

the charge is not for us. "It is not the function of the courts, upon the return of a writ of habeas corpus, to try out the actual guilt of the accused." *People of the State of New York ex rel. John Gottschalk, Respt.,* v. *Charles E. Brown, Sheriff of Chautauqua County, Appt.,* 237 N. Y., 483, 143 N. E., 653, 32 A. L. R., 1164, 1166; *Ex parte Quint,* 54 N. Dak., 515, 209 N. W., 1006, 1007. However, he may set up in defense of extradition as a fugitive from justice that he is not. *Ex parte Roberson,* 38 Nev., 326, 149 Pac., 182, L. R. A. 1915 E, 691.

"A person cannot be said to have fled from a state in which he is charged with the commission of a crime when he was not within that state at the time the crime is alleged to have been committed." *Ex parte Heath,* 87 Mont., 370, 287 Pac., 636, 637. Therein it is also stated on page 637:

> "The courts of this country are in accord in holding that where a person is accused of the crime of child or wife desertion, he is not a fugitive from justice within the meaning of the United States Constitution and the federal statutes relating thereto and subject to interstate extradition, if it appears that he was not in the demanding state at the time when the crime is alleged to have been committed."

The annotator in 32 A. L. R. states on page 1167:

> "A man who, being separated from his family, furnishes adequate support to them while he remains in the state where they are, but later removes to another state, and then fails to continue the support, is not, with respect to the offense of nonsupport, a fugitive from the justice of the state where the deserted wife or child remains, and is not subject to extradition."

Cited to support this statement are *Taft* v. *Lord,* 92 Conn., 539, 103 Atl., 644; *Re Kuhns,* 36 Nev., 487, 137 Pac., 83; and *People ex rel. Plumley* v. *Higgins,* 178 N. Y. Supp., 728.

To repeat, while it is unnecessary to establish in the asylum

state the commission of the crime charged, it is necessary to prove the flight, for without it, under the Constitution, the federal laws, and under our own statute, there can be no extradition of one as a fugitive. No such flight has been established in this case. Flight denotes action, movement from one place to another, and in extradition proceedings the flight must take place subsequently to the commission of crime as alleged. Since the petitioner has never returned to Massachusetts since he first defaulted, it is impossible for him to have fled from justice after the alleged commission of a crime therein.

EXCEPTION 5. This is that "there had been no hearing on the Complaint and therefore hearing should be had on the Complaint before the Governor or the Court." We assume that the complaint referred to in Exception 5 is that which was made to the Western Washington County Municipal Court in this State on March 26, 1942, charging the petitioner with being a fugitive from justice and based on Sec. 6 of Chap. 10, P. L. 1939. That there was no hearing upon the warrant which issued on said complaint is not denied; but had there been a hearing and the petitioner had not been discharged, the judge or magistrate so holding him, as expressly provided by Chap. 150, Sec. 15, R. S. 1930, could have only committed him to jail for such a time specified as would have enabled his arrest on a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless he gave bail or until he should be legally discharged. Clearly, the issue of such a warrant is not to protect him from extradition but simply to secure his person for future arrest under the governor's warrant. In this case the purpose of the statute was accomplished without the necessity of such a hearing. This petitioner has no grievance on this exception.

THE SIXTH AND LAST EXCEPTION is that the indictment found by the grand jury in Bristol County, Massachusetts, was defective, as also the said complaint, in that they did not allege any certain date when the alleged crime was committed. The allegation as to time is that "*on or about* the twelfth day of

March in the year of our Lord one thousand nine hundred and forty-one, did" etc. (Italics ours.)

The matter of the sufficiency of the indictment as a criminal pleading in extradition proceedings was fully considered and determined by the United States Supreme Court in *Henry Clay Pierce, Appt.,* v. *Edmund P. Creecy, Chief of Police of the City of St. Louis,* 210 U. S., 387, 28 S. Ct., 714, 52 Law Ed., 1113. The Court stated on page 1120 of 52 Law Ed.:

> "The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he has fled." (See many cases there cited.)

The allegations in both the indictment and complaint herein meet the test established by the Supreme Court in the Pierce case, supra. Also see Par. 8, page 1125, Vol. 2, in Honnold's Supreme Court Law and cases there cited.

It should be noted that we have another statute that does not require the establishment of flight under certain circumstances. See Sec. 3 of Chap. 10, P. L. 1939, amending Sec. 6 of Chap. 150, R. S. 1930. As amended this section reads:

> "The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

But the fact is, as shown by the documentary evidence in the case as well as by the testimony, that the petitioner

was not charged with the commission of any act in this state intentionally resulting in a crime in the Commonwealth of Massachusetts. His surrender was demanded on the ground that he was a fugitive from justice of that Commonwealth and he was ordered to be surrendered for that reason only.

*Exceptions 2, 3, and 4 sustained.*
*Petitioner discharged.*