# Richmond

Nicholas Spiak v. T. Wilson Seay, Sheriff, etc.

November 25, 1946.

Record No. 3166.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Leith S. Bremner* and *Harry N. Phillips, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. Carrington Thompson, Assistant Attorney General,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

A petition for a writ of *habeas corpus* was filed by Nicholas Spiak against T. Wilson Seay, Sheriff of Henrico county, in the Law and Equity Court, Part II, of the City of Richmond. The writ was granted and the court made it returnable to the Circuit Court of Henrico county on January 14, 1946. There the matter was maturely considered and, on the 6th of March, 1946, a final order was entered dismissing the writ and petition. Spiak was ordered to be delivered to the State of California. He applied for and obtained the present writ of error.

Briefly, the facts are these: The State of California is seeking the return of Nicholas Spiak who was there indicted for grand theft under the California law. He left California and was found in Henrico county, Virginia. Spiak, who was an acquaintance of M. G. Blackwell in Los Angeles, California, was the fiance of Ruth Woodward, and she was the adopted sister of Blackwell. Spiak falsely represented to Blackwell, according to Blackwell's affidavit,

that he, Spiak, and Ruth Woodward were engaged to be married; that the ceremony would take place in the near future, and that he needed $9,000 to assist him in paying for a home in Beverly Hills. He stated that he had the money with which to purchase the home in a lockbox in Chicago and would repay Blackwell as soon as he had access to the lockbox and could obtain the money therefrom. Blackwell relied upon the representation of Spiak and advanced the $9,000. A short time later Spiak disappeared and they had no information as to where he had gone.

In August, 1945, the police department of Los Angeles, California, being unable to locate Spiak, broadcast through its police bulletin requesting information of him. He was found and arrested in Henrico county, Virginia, and later request for extradition was made by the Governor of California to the Governor of Virginia, and the Governor of Virginia granted the same on January 7, 1946. Thereafter the petition for the writ of *habeas corpus* was filed by Spiak, which, as already indicated, terminated in a judgment adverse to him.

The assignment of error is that the criminal prosecution in the State of California was instituted primarily for the purpose of collecting a debt, and that the entire transaction upon which the indictment was founded was of a civil nature. It is contended that the transaction amounted to no more than a loan of $9,000 by Blackwell to Spiak.

The provision of the Constitution of the United States on interstate extradition, together with the Acts of Congress on the subject, are a part of the supreme law of the land and therefore a part of the law of each State.

Article IV, section 2, of the Federal Constitution, provides in part: "A person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."

It was deemed wise that Congress should enact legislation in aid of the constitutional provision. The present United States Statute had its source in an Act of February 12, 1793. See 18 U. S. C. A. §§ 662, 663. Section 662 is as follows:

"Fugitives from State or Territory. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or. Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

Section 663 is not pertinent to the matter under consideration.

■ While it is true that the foundation and nature of the right of extradition are to be found in the Federal Constitution and the effectuating statutes (see 35 C. J. S., Extradition, section 2), yet the several States may enact nonconflicting legislation in aid of extradition. Consequently, in Virginia, our General Assembly has enacted a number of aiding statutes. See chapters 203 and 203A of the 1942 Code (Michie), sections 5059 to 5070ee, inclusive. These statutes are known as the Uniform Criminal Extradition Law.

Section 5070b is as follows:

"Subject to the provisions of this chapter, the provisions of the Constitution of the United States controlling, and any and all Acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other of the United States any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State."

Code, sec. 5070c provides specifically how the demand or requisition shall be made upon the Governor of Virginia. It must be in writing and the accused must have been present in the demanding State at the time of the commission of the alleged crime and thereafter fled from such State. A copy of the indictment found, or a copy of an information supported by affidavit filed in the State having jurisdiction of the crime, or a copy of an affidavit made before a magistrate in such State must accompany the requisition. There are other requirements of the statute. All of them seem to have been complied with in this case.

We are of the opinion that the indictment involved here legally charges an offense for which the plaintiff in error may be extradited. Under section 484 of the Penal Code of California theft is defined thus:

"Every person who shall feloniously steal, take, carry, lead or drive away the personal property of another or who shall fraudulently appropriate property which has been entrusted to him or who shall knowingly or designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor, or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character, and by thus imposing upon any person, obtain credit and thereby fraudulently gets or obtains possession of money * * * is guilty of theft. * * * "

Section 486 provides that theft is divided into two degrees, the first of which is grand theft, and the second petty theft. Section 487 provides that grand theft is committed when the money, &c., taken, is of value exceeding $200.

The short form of indictment is authorized in California. See sections 951 and 952 of the Penal Code. The indictment here involved, which was found as a true bill, is as follows:

"In the Superior Court of the State of California in and for the County of Los Angeles.

"The People of the State of California, Plaintiff

" v.

"Nicholas Speak, Defendant

"CS No. 104353  INDICTMENT — GRAND THEFT

"The said Nicholas Speak is hereby accused by the Grand Jury of the County of Los Angeles, State of California, by this indictment, of the crime of Grand Theft, a felony, committed prior to the finding of this indictment, and as follows:

"On or about December 5, 1944, at and in the County of Los Angeles, State of California, said defendant, Nicholas Speak did wilfully, unlawfully and feloniously take Nine Thousand Dollars ($9,000) in money, lawful money of the United States, then and there the personal property of one M. G. Blackwell."

The indictment sent to the Governor of Virginia together with the requisition and all other papers in connection therewith were duly and properly authenticated. An affidavit in proper form made by M. G. Blackwell, the prosecuting witness, giving the essential facts upon which the indictment was founded accompanied the papers. From the foregoing it is conclusively shown that the plaintiff in error was legally charged with a crime in California.

The legality of extradition proceedings is always open to inquiry upon an *habeas corpus* application, and in this case, as already indicated, after the Governor of Virginia granted the request of the Governor of California, the legality of the proceedings was tested by the writ of *habeas corpus* before the Circuit Court of Henrico county from which this petition for writ of error has come.

The rights of the plaintiff in error are further safeguarded by section 5070j of the Code (Michie). It is as follows:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge or justice in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his council shall state that he or they desire to test the legality of his arrest, the judge or justice shall fix a reasonable time to be allowed him within which to apply for a writ of *habeas corpus*. When such writ is applied for, notice thereof and of the time and place of hearing thereon shall be given to the attorney for the Commonwealth of the county or city in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding State."

It is seen from the record in this case that the provisions of the foregoing statute were strictly complied with.

Here we have no question as to the identity of the person. The plaintiff in error, who is a fugitive from justice, so far as this record is concerned, admits that he obtained the $9,000 from Blackwell in California, but claims it to have been a loan. The crime charged in the indictment and disclosed in the affidavit is that Spiak obtained from Blackwell, under false pretenses, the sum of $9,000. He may or may not be guilty of the offense charged by California. This is no concern of ours. No doubt that issue will be resolved in California. Our duty is ended when we ascertain, as we have, that the papers are in due form and properly authenticated, and that there has been full compliance with all of the constitutional and statutory requirements.

The prosecution in California may or may not result in Blackwell's collecting the $9,000. This, if he is successful, would be purely an incidental matter. The primary consideration is that the criminal offense charged is against the laws of California. That State, in the criminal prosecution, will not be interested in the collection of the debt by Blackwell, if it be purely a debt. When its criminal laws

shall have been vindicated its interest will cease. The motive for the prosecution is not material. The rule is clearly and succinctly stated in an annotation in 94 A. L. R., page 1496, thus:

"The courts on *habeas corpus* will not inquire into the motives which induced a governor to grant, honor or refuse a requisition, since such an inquiry would be opposed both to the plainest principles of public policy and to freedom of action by the executive within his constitutional authority."

In the annotation, 94 A. L. R., page 1493, is a collection of many of the cases throughout the United States dealing with the subject. They need not be cited here.

When a requisition is made it is the act of a sister State having equal sovereignty to our own, and not the act of some creditor or person holding a selfish private motive who may have instigated the prosecution.

The application for the requisition represents that it is made in good faith and not for the purpose of collecting a debt or for any other private purpose. This is in conformity with the Uniform Criminal Extradition Law which, as we have seen, has been adopted in Virginia. See Code, 1942, section 5070w, (a) (Michie).

We think the judgment should be affirmed.

*Affirmed.*