No. 37,174

ALBERT OHRAZADA, *Appellant, v.* LEONARD TURNER, Sheriff, *Appellee.*

(190 P. 2d 413)

Opinion filed March 6, 1948.

*Homer Davis,* of Leavenworth, was on the briefs for the appellant.

*Edward F. Arn,* attorney general, *Harold R. Fatzer,* assistant attorney general, and *John H. Murray,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from the judgment of the district

court of Leavenworth county denying a petition for a writ of habeas corpus.

The respondents named were the sheriff of Leavenworth county, and one John Doe, agent of the state of Missouri.

The case involves extradition proceedings instituted by the state of Missouri for the return of Albert Ohrazada, hereinafter called the petitioner.

The chronological order of events was: In November, 1941, petitioner was convicted of larceny of a motor vehicle in the state of Missouri and was sentenced to serve a two-year term in the penitentiary of that state; in September, 1942, petitioner was granted what is denominated in the record as a "conditional commutation parole" upon the express conditions therein set forth (we shall refer to it as a parole); in December, 1942, police officers of Kansas City, Mo., arrested the petitioner and another person and interrogated them concerning various law violations; petitioner claimed no knowledge thereof; the police officers delivered him to the federal authorities; in the district court of the United States for the western district of Missouri petitioner entered his plea of guilty to the charge of transporting stolen clothing across the state line; he was sentenced to serve a term of seven years in the federal penitentiary at Leavenworth, Kan.; after the plea of guilty and sentence and by reason thereof the governor of Missouri revoked the state parole; in December, 1947, the petitioner obtained a conditional release from the federal penitentiary; no copy of the conditional release or parole from the federal penitentiary was introduced; petitioner stated that under his conditional release he was required to report and was made responsible to the federal probation agent until the full term of his federal sentence expired.

A detainer had been lodged for the petitioner by the state of Missouri with the officials of the federal penitentiary. On his release from that institution a warrant of the governor of Kansas, issued pursuant to the request of the governor of Missouri for petitioner's requisition, was served on the petitioner by the sheriff of Leavenworth county. The instant proceeding was promptly instituted for petitioner's release.

No question is raised concerning the regularity or sufficiency of the proceedings for extradition.

The petitioner first contends that while on parole in the state of Missouri that state voluntarily surrendered its custody to the fed-

eral authorities and therefore that state cannot now regain custody for the purpose of compelling him to serve the unexpired term of the state sentence.

Had petitioner been pardoned or had his state sentence been commuted by the governor of Missouri this state would not have recognized the request for requisition. (*In re Jones*, 154 Kan. 589, 121 P. 2d 219.) In the instant case there is no showing the governor of Missouri pardoned petitioner or commuted his sentence. The proof is petitioner had not fully served his state sentence and was only at liberty on parole. While on parole he was constructively a prisoner of the state of Missouri and in the legal custody of its duly authorized officials. (*Anderson v. Corall*, 263 U. S. 193, 196, 68 L. Ed 247; *United States v. Dillard*, 102 F. 2d 94, 96.)

The petitioner does not rely on any theory of presumptive relinquishment of custody by Missouri but rests his case on the ground that state actually and voluntarily surrendered its custody to the federal authorities. This contention is based on his own testimony, as follows: While on parole in Missouri the police officers of Kansas City, Mo., picked him up for questioning concerning various crimes that allegedly had been committed; he knew nothing concerning them; the police officers told him if he would confess to the commission of those offenses they would return him to the state penitentiary, but if he did not do so they would deliver him to the federal authorities and he would be obliged to serve far more time; the police officers said they had contacted the parole officers of Missouri and that the latter said they did not want him; the police officers delivered him to the federal authorities; he did not know to what state officers the police officers of Kansas City, Mo., had talked or what state officers said they did not want him; he did not know whether the governor released him and he had seen no written release from the governor of Missouri.

The record further discloses: The police officers delivered petitioner to the federal officers for trial of the alleged federal offense; petitioner entered his plea of guilty to the federal charge, previously mentioned; the governor thereafter, by reason of such plea and sentence, revoked petitioner's parole and subsequently the state of Missouri lodged a detainer for the petitioner with the officers of the federal penitentiary.

Petitioner's testimony fails to show the right to custody was actually surrendered by any competent authority of the state of Mis-

souri. (*In re Martin,* 142 Kan. 907, 52 P. 2d 1196; *Perry v. Gwartney,* 162 Kan. 607, 610, 178 P. 2d 185.) On the other hand the record tends to show that state intended to retain and to later reassert its right to custody. Otherwise there would have been no occasion to revoke his parole and to lodge a detainer for his return at the federal penitentiary. These facts are related only to indicate the trial court was not compelled to believe Missouri had voluntarily and permanently relinquished custody to the federal authorities. This case presents no controversy between that state and the federal government over the subject of custody and the petitioner cannot challenge it under the facts of the instant case. (*Perry v. Gwartney,* supra, p. 612.)

It also may be well to observe this case does not involve the perplexing question of the right to custody presented in *Johnston v. Wright,* 137 F. 2d 914, and in *United States v. McDonnell,* 153 F. 2d 919. In those cases the seventh and ninth circuit courts of appeals differ somewhat with respect to the right of custody, but the conflict of views appears to be predicated upon the proper interpretation of sentence provisions contained in the respective journal entries of judgment.

A petitioner for habeas corpus seeking to defeat extradition has the burden of establishing that he is not a fugitive from justice. (*Moreaux v. Ferrin,* 98 Utah 450, 100 P. 2d 560.)

In *Perry v. Gwartney,* supra, we held:

"In a petition for writ of habeas corpus the fact that petitioner was delivered by the state authorities of Missouri to federal authorities in Missouri to be taken to Kansas for confinement in the federal penitentiary pursuant to a sentence of a federal court, does not prevent the petitioner from being a fugitive from justice so as to be liable for extradition on request therefor by the governor of Missouri." (Syl. ¶ 1.)

The facts in the case of *In re Martin,* supra, are fully set out in the opinion of the case and need not be restated here. It was there said:

"Unless he was released from further prosecution by pardon of the governor of that state, or as a necessary consequence of some requirement of law, *the cause of his leaving and the manner in which he left were immaterial,* if in fact an offense had been committed within the demanding state and he kept himself out of that state. There is no showing that he ever was taken from the state of Texas under such circumstances that that state could not at an appropriate time demand his return." (p. 912.) (Emphasis supplied.)

We think the same is true concerning the right of a demanding state to require a petitioner's return from an asylum state to complete service on a sentence for a crime previously committed in the former state.

We need not, under the facts of this particular case, rest our decision on the ground the record fails to show Missouri actually surrendered custody. Let us indulge the presumption government officials never perform an unauthorized or unlawful act and that the federal authorities did not obtain custody without the proper consent of Missouri officials. How can such a presumption aid the petitioner in this case? If we indulge the above presumption we must do likewise with respect to the subsequent relinquishment of custody by the federal officials to the state officials of Missouri when the petitioner was released on parole from the federal penal institution at Leavenworth. (*Rosenthal v. Hunter, Warden,* 164 F. 2d 949.)

There is no evidence the federal authorities refused to recognize the state detainer or in any other manner sought to prevent Missouri from again obtaining custody of petitioner in order that he might be returned to Missouri for the purpose of serving that portion of the state sentence which remained unserved at the time the federal authorities brought him into Kansas from Missouri. From the record it is entirely logical to conclude the two governments in all probability were operating in full harmony under the well recognized comity doctrine which petitioner cannot challenge so long as the sentences imposed by both governments are in full force and effect.

In *Perry v. Gwartney,* supra, we held:

"The fact that a petitioner for a writ of habeas corpus has been sentenced to the federal penitentiary in Kansas and placed on probation from the sentence does not prevent his being returned to Missouri on request of the governor of that state for trial there for violation of the criminal statutes of that state." (Syl. ¶ 3.)

In the course of the opinion it was stated:

"Petitioner next argues that when he finished his sentence of a year and a day in the federal penitentiary of Kansas he was then at liberty on probation from the federal court of Kansas and cannot be prosecuted for any other crime while he is thus under the wing of the federal court. In this connection he

relies upon *Grant v. Guernsey,* 63 F. 2d 163. That was a case where a party in Kansas pleaded guilty in federal court to a violation of the federal banking laws and was sentenced upon the charge and released upon probation. While he was thus at liberty on probation the county attorney of the county where the crime had been committed sought to prosecute him for violation of the state statutes. The federal court held that he could not be so prosecuted. The Guernsey case seems to turn upon the fact that no request had been made to the federal court for release of its jurisdiction and control over Guernsey so that he could be tried by the state court. The court also pointed out that it was not clear as to whether the federal court would be compelled to release or whether it was discretionary. Regardless of the holding in the Guernsey case we prefer the rule announced in *In re Andrews,* 236 Fed. 300, where it was held that the question of which court should have the custody of a defendant was one of comity between the two governments and not a personal right of the prisoner and could not be raised by him." (p. 612.)

See numerous federal cases cited in same opinion.

The petitioner further argues the law of interstate extradition of fugitives from justice rests upon federal law founded on the federal constitution and decisions of the supreme court of the United States and not on decisions of state courts, citing *In re Roberts,* 186 Wash. 13, 56 P. 2d 703; *The People v. Meyering,* 357 Ill. 166, 191 N. E. 318; *Moreaux v. Ferrin,* 98 Utah 450, 100 P. 2d 560. No decisions of the supreme court of the United States, inconsistent with the views herein expressed, are cited and we are aware of none.

The judgment denying the issuance of the writ is affirmed.