No. 37,623

TRUMAN W. POWELL, *Appellant*, v. LEONARD S. TURNER, Sheriff, *Appellee.*

(207 P. 2d 492)

Opinion filed June 11, 1949.

*Joseph H. McDowell,* of Kansas City, was on the briefs for the appellant.

*Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: This is an appeal from an order of the district court of Leavenworth county refusing to grant the petitioner, Truman W. Powell, a writ of habeas corpus. There is no dispute as to the facts. On April 18, 1934, petitioner was sentenced in the state of Illinois for the crime of burglary, and in May or June, 1936, received a parole from the Illinois penitentiary by the Illinois Division of Correction, which parole permitted him to leave that state. The parole which was signed by petitioner was received in evidence. In June, 1937, petitioner was arrested by federal authorities in Tennessee, and upon pleading guilty to several counts was sentenced by the United States district court for the district of Tennessee. The latter part of that sentence was served at the federal penitentiary in Leavenworth, Kan., from which institution he received a conditional parole on December 20, 1948. The record indicates that during this conditional parole on the federal conviction and until November 9, 1952, petitioner would be in the technical custody of the federal authorities. On July 22, 1937, petitioner's parole from the Illinois penitentiary was revoked by the Illinois authorities because his federal violation in Tennessee constituted a violation of the conditions of his parole. An order for his arrest was issued by the warden of the Illinois penitentiary and a detainer lodged with the federal penitentiary officials. Upon demand from the governor of Illinois, the governor of Kansas issued a "governor's warrant" for petitioner on December 18, 1948, directed to the sheriff of any county in Kansas and commanding such sheriff to apprehend this petitioner and deliver him into the custody of the duly commissioned agent of the state of Illinois. The record further indicates that as petitioner was about to be released from the federal penitentiary at Leavenworth,

a deputy sheriff of Leavenworth county appeared at the federal penitentiary and the petitioner was then and there turned over to the Leavenworth county sheriff in whose custody he still remains awaiting the outcome of this appeal. This transfer of custody took place within the federal penitentiary. The following day, December 21, 1948, the Kansas governor's warrant arrived by mail in the office of the record clerk of the federal penitentiary at Leavenworth. Upon being advised by the record clerk that the governor's warrant had arrived, the sheriff sent a deputy to pick it up and, according to petitioner's evidence, it was kept in the sheriff's files without being read to or served upon petitioner. Also on December 20, 1948, a writ of habeas corpus was issued by the district court commanding the sheriff to bring the petitioner before the court on December 23, 1948. On December 22, the sheriff made his return stating that he was holding petitioner in custody "by virtue of a governor's warrant." On December 23, 1948, after a full hearing, the court found that petitioner was lawfully restrained in the custody of respondent; that the application for a writ of habeas corpus should be denied; and that petitioner should be remanded to respondent's custody for delivery to the agent of the state of Illinois. From this order and judgment of the district court petitioner has appealed.

The appellant petitioner contends that he is wrongfully held in custody by the sheriff of Leavenworth county for the following reasons:

(1) The arrest by the sheriff of Leavenworth county on December 20 was illegal because it was without a warrant, the extradition warrant from the governor of Kansas not having been received by the sheriff until the next day, and it not having been served upon or read to the petitioner.

(2) The Kansas governor's warrant is illegal in that under Illinois law the petitioner was not a parole violator, and his parole could not have been revoked unless he had first returned to Illinois.

(3) That he has not fled from Illinois, and is not a fugitive from justice.

(4) He is in the constructive custody of the attorney general of the United States, and that both Kansas and Illinois are thereby divested of jurisdiction to extradite him from Kansas to Illinois.

(5) That petitioner's parole from the Illinois penitentiary amounted to a commutation of sentence from that institution.

Appellant's first contention presents a question which was before

this court in *Yaws v. Warden of New Mexico Penitentiary*, 166 Kan. 685, 203 P. 2d 742, in which we held:

"The extradition of fugitives from justice is covered by G. S. 1947 Supp. 62-727 to 62-757. These sections comprise what is known as the uniform extradition act. It has been adopted by most, if not all, of the states. It provides that the demand from the governor of the demanding state, upon the governor of the state where the fugitive has been found, must be in writing. It does not, however, provide that there shall be any hearing at which the fugitive shall be present or of which he shall have notice. It provides that the governor may call upon the attorney general to investigate a demand, but nowhere does it provide that he must investigate it or have it investigated. There is a provision that the governor may investigate the guilt or innocence of the fugitive but only when such is necessary in identifying the person held. There is a provision for the arrest of any person without a warrant upon reasonable information that the person stands charged with a felony. In such cases he must be taken immediately before a magistrate and may be admitted to bail pending the hearing. None of these provisions apply to petitioner. The demand on the governor by the governor of New Mexico was made in writing. Extradition proceedings are no part of the trial. *They are somewhat analogous to the original warrant in an ordinary prosecution.* The warrant is issued on a sworn complaint but no one would contend that a defendant must be present when a warrant is issued." (p. 688.) (Emphasis supplied.)

Section 62-740, G. S. 1947 Supp., of the Uniform Extradition Act provides:

"The arrest of a person may be lawfully made also by any peace officer or private person without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant."

The order received by the Leavenworth county sheriff from the warden of the Illinois state penitentiary and the detainer filed with the federal penitentiary authorities were sufficient reasonable information (as required in section 62-740) upon which to arrest and detain appellant petitioner. True, the foregoing section of the statute requires that accused be taken before a magistrate for the issuance of a fugitive warrant, but a governor's warrant had already been issued two days before and was in the hands of the Leavenworth county sheriff on the day following petition's arrest. Within twenty-four hours after petitioner's arrest the respondent was holding petitioner in custody under the Kansas governor's warrant—

and that sufficiently met the requirements of section 62-740, *supra.*

The arrest of the petitioner and his being held in custody by virtue of the governor's warrant was in accord with the provisions of the Uniform Extradition Act (G. S. 1947 Supp., ch. 62, art. 7) adopted in this state.

Appellant next contends that he was not a parole violator because his parole could not be revoked under the Illinois law unless he first returned to that state, and therefore the Kansas governor's warrant was illegally issued. The Illinois parole which was received in evidence had attached to it the "rules of parole" and the parole was said to be granted in accordance with those rules. We do not deem them of sufficient importance to quote here, but suffice it to say that petitioner admits by his testimony that he violated certain of these rules including Rule No. 6, which provided:

"The prisoner must respect and obey the laws, and conduct himself in all respects as a good citizen."

Rule No. 7 provided:

"A violation of any of the above rules forfeits the parole contract on the part of the party paroled and renders him liable to be returned at once to the institution for such action as the Parole Board deems advisable."

It may also be noted that chapter 38, section 808 of the Illinois Revised Statutes (1919), pleaded by petitioner in his reply, requires the paroled prisoner to "in all respects keep faithfully his parole agreement until discharged." There is an apparent lack of merit in appellant's contention that he was not a parole violator; however, we may well have omitted to labor the point because it is not within the province of this court to inquire into that question of fact. The presumption is that the governor's warrant was properly issued and was valid, and there is nothing in the record to indicate the contrary.

Section 62-746, G. S. 1947 Supp. (of the Uniform Extradition Act), provides:

"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

Also note the following statements from Corpus Juris Secundum:

"In the absence of proof to the contrary, it will be presumed that the

governor acted in conformity with law in the issuance of his warrant, and that he performed his duty as to the determination of the jurisdictional facts; and the warrant or the recitals therein are prima facie evidence of such facts. The warrant is ordinarily not conclusive proof that the requirements of the statute were complied with before its issuance." (35 C. J. S. 345-346, § 16d.)

"Although the power and duty of determining whether a sufficient showing has been made to warrant the extradition of the person demanded rest in the first instance on the governor of the asylum state . . . his determination is not conclusive but is subject to review on habeas corpus. On the other hand, the usual presumption of regularity which attends official action renders the governor's determination prima facie correct, and casts the burden of proof on accused to show the contrary. The scope of inquiry in a summary proceeding in habeas corpus to prevent extradition is necessarily narrow, and as a general rule it is necessary and proper to pass only on the legality of the requisition and rendition. The only inquiry to be made is whether the statutory prerequisites have been complied with. When the extradition papers are in proper form it has been held that there are but two questions open to inquiry: (1) Is petitioner a fugitive from justice? (2) Is he the identical person described in the governor's warrant? On an application for a writ of habeas corpus by one extradited as a fugitive from justice, the court is controlled by the law and may not grant relief in the exercise of a sound legal discretion." (39 C. J. S. 548-550, § 39a [1].)

In *Person v. Morrow*, 108 F. 2d 838, the United States Circuit Court of Appeals (10th Circuit) stated the rule:

"In habeas corpus proceeding involving extradition, doubtful questions respecting validity of indictment were to be left to courts of demanding state.

"Ordinarily, the questions open to review in a summary proceeding in habeas corpus to prevent extradition are whether petitioner stands substantially charged with a crime in the state from which he fled, whether petitioner is a fugitive from the justice of such state, and whether warrant of extradition is regular on its face." (Syl. ¶¶ 2, 6.)

The petitioner was a parole violator and apparently under Illinois law it was proper for that state to revoke his parole. Be that as it may, there is nothing in the record before us to indicate that the Kansas governor's warrant was improperly issued, and the questions concerning petitioner's Illinois parole, or any violation thereof, will be left to the Illinois courts.

For his third point, appellant insists that he has not fled from Illinois and is not a fugitive from that state. Here again, the governor's warrant is prima facie evidence that petitioner is a fugitive and the burden is upon the petitioner to overcome the prima facie case made by the warrant. He has not done so. In fact, the record shows he was paroled in Illinois in 1936, and that this parole was

revoked in July, 1937. As to a parole violator being a fugitive, we find the rule stated in 35 C. J. S. 327-328, as follows:

"An indicted or convicted prisoner who escapes may be extradited as a fugitive from justice; and the same is true as to a paroled prisoner who violates his parole or whose parole has been revoked. This rule applies notwithstanding the paroled prisoner's entry into the asylum state, prior to the violation or revocation of his parole, was with the consent or knowledge of the authorities of the demanding state, and irrespective of whether his departure from the demanding state or his entry into the asylum state was voluntary or involuntary."

We adhere to this rule. (*Ohrazada v. Turner*, 164 Kan. 581, 585, 190 P. 2d 413.)

Appellant also argues that being on parole from the federal court until 1952, he is in the constructive custody of the attorney general of the United States and both Kansas and Illinois are divested of jurisdiction over him. It is true that the attorney general of the United States and the federal courts may refrain from relinquishing a federal prisoner or parolee to state authorities for prosecution within the state. However, the conditional release by federal authorities does not in itself preclude action by a state during the term of probation or parole. It is a discretionary matter with the attorney general of the United States as to whether a federal prisoner will be "delivered up" or a state be permitted to prosecute or incarcerate him. The federal prisoner or parolee cannot himself take advantage of his status by way of defense to a prosecution by the state. The matter of his custody is one of comity between the two jurisdictions, and he has no voice in it. There is no question in the instant case but that petitioner was "delivered" or "turned over" to the Leavenworth county sheriff by the federal officials, for the transfer of custody was made "within the walls" of the federal penitentiary.

In *Ohrazada v. Turner*, supra, in a somewhat analogous situation, we said in the syllabus (¶ 3):

"Where sentences imposed by state and federal courts are both in full force and effect and authorized officials of the respective governments, pursuant to recognized doctrine of comity, grant priority of custody to each other for sentence serving purposes the prisoner has no voice in the matter."

In *Ponzi v. Fessenden*, 258 U. S. 254, 260, 66 L. Ed. 607, 42 S. Ct. 309, it was held by the United States supreme court:

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but

he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. *In re Andrews,* 236 Fed. 300; *United States v. Marrin,* 227 Fed. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.

"One accused of crime, of course, cannot be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense. *Frank v. Mangum,* 237 U. S. 309, 341; *Lewis v. United States,* 146 U. S. 370. If that is accorded him, he cannot complain. The fact that he may have committed two crimes gives him no immunity from prosecution of either.

"The chief rule which preserves our two systems of courts from actual conflicts of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." (p. 260.)

See, also, *In re Andrews,* 236 Fed. 300.

We approved the rule stated in the last cited case in *Perry v. Gwartney,* 162 Kan. 607, 611, 178 P. 2d 185, where we said:

"The Guernsey case [63 F. 2d 163] seems to turn upon the fact that no request had been made to the federal court for release of its jurisdiction and control over Guernsey so that he could be tried by the state court. The court also pointed out that it was not clear as to whether the federal court would be compelled to release or whether it was discretionary. Regardless of the holding in the Guernsey case we prefer the rule announced in *In re Andrews,* 236 Fed. 300, where it was held that the question of which court should have the custody of a defendant was one of comity between the two governments and not a personal right of the prisoner and could not be raised by him." (p. 612.)

Finally, appellant cites *In re Jones,* 154 Kan. 589, 121 P. 2d 219, in which petitioner was released upon a writ of habeas corpus by the district court of Leavenworth county and respondent appealed to this court. The district court in that case had made extended findings of fact which indicated that petitioner was neither a parole violator nor a fugitive from justice. None of the findings were challenged by respondent. The Louisiana authorities had voluntarily released petitioner from the Louisiana state penitentiary *without any application for clemency upon his part,* and turned him over to federal authorities who prosecuted him with the result that he was ultimately incarcerated in the federal penitentiary at Leav-

enworth, Kan. The district court released petitioner Jones and upon appeal by respondent, we said:

"That the facts contained in the finding are true is now admitted. What is the effect of the admitted facts? It is that in refusing to return to the state of Louisiana appellee violated no condition attached to his release from the custody of officials of the state of Louisiana. The executive order of release was in the nature of a commutation of sentence." (p. 594.)

The instant case presents an entirely different situation. The trial court here made no findings which would justify petitioner's release. Petitioner had admittedly violated the terms and conditions of his parole, and he is a fugitive from justice. Petitioner's parole from the Illinois state penitentiary was granted upon condition that he be a law-abiding citizen, and petitioner signed the parole agreeing to these conditions. He went to Tennessee and violated his parole which was subsequently revoked. It cannot be said, as appellant would have us say here, that petitioner Powell's conditional parole from the state penitentiary of Illinois amounted to a "commutation of sentence."

The judgment of the district court denying a writ of habeas corpus is affirmed.