In the Matter of the Petition of WILLIAM R. JUSTICE for a Writ of Habeas Corpus, *Appellee,* v. TY LOCKETT, Sheriff of Sedgwick County, Kansas, *Appellant.*

No. 38,958

In the Matter of the Petition of RICHARD V. HUNT for a Writ of Habeas Corpus, *Appellee,* v. TY LOCKETT, Sheriff of Sedgwick County, Kansas, *Appellant.*

No. 38,956

In the Matter of the Petition of CHRIS J. MILLER for a Writ of Habeas Corpus, *Appellee,* v. TY LOCKETT, Sheriff of Sedgwick County, Kansas, *Appellant.*

(259 P. 2d 152)

Opinion filed July 6, 1953.

*Manford Holly,* deputy county attorney, of Wichita, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, both of Topeka, and *H. L. Arterberry,* deputy district attorney, of Los Angeles, Cal., and *Warner Moore,* county attorney, and *William C. Farmer,* both of Wichita, were with him on the briefs for the appellant.

*E. Lael Alkire,* of Wichita, argued the cause, and *Clark V. Owens,* of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: These three habeas corpus cases were consolidated for trial in the district court and on appeal here for the reason that they are governed by the same legal principles.

The facts may be stated briefly as follows: On May 20, 1952, the

grand jury of the superior court, sitting in and for the county of Los Angeles in the state of California, returned an indictment charging the petitioners in these proceedings, William R. Justice, Richard V. Hunt, Chris J. Miller, and one Raymond E. Chamberlain, in count 1, with the crime of criminal conspiracy to violate the Corporate Security Act of the state of California, and in counts 2 through 11, being substantive counts, charging violations of the act in that they sold and issued and caused to be sold and issued for value in Los Angeles county, California, fractional interests in oil and gas leases located in McPherson and Ellis counties, Kansas, without first having applied for and received a permit to do so from the commissioner of corporations of the state of California. Each of the counts charged a felony under California law. Bench warrants were issued and served upon Chamberlain, who is a resident of Los Angeles, and which could not be served upon Justice, Hunt and Miller. On June 13 the district attorney of Los Angeles county made application to the governor of California for a requisition upon the governor of Kansas for the arrest and rendition of Justice, Hunt and Miller, who are residents of Wichita, Kansas. The governor of California issued a requisition on June 17, 1952, and at the same time appointed three agents to take and receive from the proper authorities in Kansas the three named defendants. Thereafter, and on July 14, 1952, a hearing was had before the Honorable Edward F. Arn, governor of Kansas, who, after a full hearing, issued executive warrants for the arrest of the defendants Justice, Hunt and Miller and delivered them to the agents of the state of California named in the warrant. These warrants were taken to and served by the sheriff of Sedgwick county, Kansas, who took the persons named therein into custody. Thereupon each of them went into district court and filed a petition for habeas corpus. William C. Farmer, a deputy county attorney of Sedgwick county, on behalf of the sheriff, filed returns to the respective writs, setting out in detail the indictments and all of the proceedings leading to the issuance of the warrants under which defendants had been taken into custody. A response to the return of the writs in each case was filed by the petitioner and a hearing was had before the Honorable Howard C. Kline, judge of the district court, division No. 2, of Sedgwick county, Kansas. The material portions of the journal entry of the court in the habeas corpus proceedings of Richard V. Hunt, after stating the appearance of the parties, reads:

"WHEREFORE, the parties hereto announce themselves ready for trial, introduce their evidence, and the Court, after considering the evidence, the arguments, statements, and admissions of counsel, made the following findings, rulings, and orders, to-wit: That the petitioner, Richard V. Hunt, should be and is hereby discharged, and the Writ of Habeas Corpus is herewith granted, and the warrant issued by the Governor of the State of Kansas is found to be illegally issued, and of no force and effect.

"The Court further specifically finds that the petitioner, Richard V. Hunt, was not charged with a crime in Count No. 1 of the Indictment presented to the Governor of the State of Kansas on behalf of the State of California, and that the petitioner is not a fugitive from justice of the State of California, under Counts No. 2 through No. 11, nor is he a fugitive from justice were Count No. 1 to have stated an offense.

"IT IS THEREFORE by the Court ORDERED that the Sheriff of Sedgwick County, Kansas, Ty Lockett, forthwith discharge Petitioner Richard V. Hunt from his custody, and that the petitioner be likewise discharged from the custody of the agents of the State of California."

The appeal is from the above findings and judgment. A similar judgment and the same procedure followed in the other two cases.

Counsel for the appellants contend that the trial court was not justified in holding that the respective petitioners were "not charged with a crime in Count No. 1 of the Indictment," and also contend that the court erred in holding that the petitioners are not fugitives from justice in any of the counts. We think these points are well taken.

Our controlling law on the extradition of persons charged with a crime begins with our Federal Constitution, the pertinent portion of which (Art. IV, § 2, 2d par.) reads:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

The present Federal statute (18 U. S. C. A. § 3182), slightly amending earlier ones, reads:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive,

and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

In conformity with the Federal constitution and statutes and to facilitate their operation, most or all of the states have adopted the Uniform Criminal Extradition Act. Kansas did so in 1937 (Ch. 273, Laws 1937), which is now embodied in the part of our criminal procedure as sections 62-727 to 62-757 of the General Statutes of 1949. Likewise California, in the same year, adopted the Uniform Criminal Extradition Act, which is found in its Penal Code, §§ 1547 to 1558.

Allegations in Count I of the indictment are as follows:

"The said William R. Justice, Raymond E. Chamberlain, Chris J. Miller and Richard V. Hunt are accused by the Grand Jury of the County of Los Angeles, State of California, by this indictment, of the crime of Criminal Conspiracy to violate the Corporate Securities Act of the State of California, a felony, committed prior to the finding of this indictment, as follows:

"That continuously throughout the period of time from about June 1st, 1949 to about January 1st, 1950, in the County of Los Angeles, and elsewhere, and within the jurisdiction of this court, the said William R. Justice, Raymond E. Chamberlain, Chris J. Miller and Richard V. Hunt knowingly, willfully, unlawfully and feloniously, conspired, combined, confederates and agreed together, and with each other, and with divers other persons, to the Grand Jury unknown, that they would violate the Corporate Securities Act of the State of California, a felony, as follows:"

These allegations are followed by the allegations of eleven overt acts, the first of which reads:

"In pursuance of such conspiracy and to effect the object of the same, the said defendant Raymond E. Chamberlain induced one Richard Hruda on or about July 20, 1949 in Los Angeles County to invest $350.00 for a 1/66 interest in each of two oil and gas leases in the State of Kansas, and that he later received said two oil and gas lease assignments signed by the defendant William R. Justice. The bank money order in payment therefor which he gave to the defendant Raymond E. Chamberlain bears the endorsement of the defendants Hunt and Justice."

The next ten overt acts charge other specific sales to named parties which were handled by the defendants Hunt and Justice, or by Miller, Hunt and Justice, or by Miller and Justice.

Count II of the indictment reads:

"For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge set forth in Count I hereof, the said William R. Justice, Raymond E. Chamberlain, Richard V. Hunt and Chris J. Miller are accused by the Grand Jury of the County of Los Angeles, State of California, by this indictment, of the crime of violation of the Corpo-

rate Securities Act, a felony, committed prior to the finding of this indictment, and as follows:

"That on or about the 22nd day of July, 1949, at and in the County of Los Angeles, State of California, the said William R. Justice, Raymond E. Chamberlain, Richard V. Hunt and Chris J. Miller, did willfully, unlawfully, feloniously and knowingly sell and issue, and cause to be sold and issued, for value, to-wit, the sum of $700 lawful money of the United States, to Robert H. Chamberlain, a security, to-wit, a certificate of interest in an oil and gas mining title and lease, without first having applied for and secured from the Commissioner of Corporations of the State of California, a permit so to do."

Counts III to XI, inclusive, follow the form of Count II and charge violation of the Corporate Securities Act in the sale to various named persons and on different dates of certificates of interest in an oil and gas mining title and lease without having applied for and secured from the Commissioner of Corporations of the State of California a permit to do so.

The indictments in this case and all the accompanying papers, including the warrant of the Governor of Kansas, are in due form. There is no contention to the contrary.

In the trial court the parties made a written stipulation of facts and circumstances leading up to the case and concerning the three appellees here, which we summarize as follows: That the defendant Justice became engaged in the oil business in the fall of 1948; that in May or June, 1949, his brother-in-law, the defendant Raymond E. Chamberlain, visited him in Wichita and became interested in investing in the oil operations; that thereafter, when Justice obtained a lease and considered working for him, he communicated that fact to Chamberlain; that others in California became interested in purchasing interests in the lease. Thereafter the interested parties in California executed an instrument as follows:

"I promise to pay _____ for _____ interest in two oil and gas leases legally described thus: (description of land). Both leases are subject to a 1/16 overriding royalty of the ⅞ths working interest. This money is to be paid on receipt of a registered assignment and a letter of liability regarding these leases."

These were signed and dated. The instruments were delivered to Chamberlain, who advised Justice the names of signers and the amount each had agreed to pay. Thereafter Justice assigned a portion of the working interest in certain leases to the defendant Hunt, who reassigned them to the California signers who had promised to pay therefor, which assignments were registered in the office of the register of deeds of McPherson county. It was agreed Hunt would

pick up the money personally in California. On July 23, 1949, Hunt secured the return of the assignments from the register of deeds, took them to Wichita and there boarded a plane and arrived in Los Angeles about eight o'clock that evening; that Hunt delivered the assignments to the proper parties, being assisted by Chamberlain, and accepted checks from the assignees and their signatures on a contract, a copy of which, excluding the land description, was attached to the stipulation, and that Hunt returned to Kansas about July 27, 1949. A similar transaction is set out in the stipulation, except that the assignment from Justice was made to the defendant Miller and from Miller to the people in California who were making purchases. These assignments were taken to California by Miller and Justice by plane. Other interests in leases covering properties in Ellis county were handled in the same way and taken by Miller and Justice to California, where they were delivered. The stipulation contained some other statements which we deem not to be pertinent here.

We now turn to the legal questions argued here. Counsel for appellant contend the court erred (1) in holding as to each of the appellees that he "was not charged with a crime in Count No. 1 of the Indictment presented to the Governor of the State of Kansas on behalf of the State of California," and (2) that he "is not a fugitive from justice of the State of California, under Counts No. 2 through No. 11, nor is he a fugitive from justice were Count No. 1 to have stated an offense." These points are well taken. Our pertinent statute (G. S. 1949, 62-746) reads:

"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

The stipulation of the parties in the trial court makes it clear that the appellees are parties named in the indictment. Hence, under this section of the statute the trial court had no authority to pass upon the question whether count No. 1 of the indictment stated an offense under the laws of California. That is a question to be determined by the California courts. Counsel for appellant have set out the pertinent California statutes and argue that the indictment does state an offense under those statutes. Apparently it does, but we have no more authority to decide that question than did the trial court, and we shall not attempt to do so.

In *Powell v. Turner*, 167 Kan. 524, 207 P. 2d 492, certiorari denied 338 U. S. 835, 70 S. Ct. 41, 94 L. Ed. 509, where the extradition was for a parole violator, it was held:

"There being nothing in the record to indicate the governor's warrant was improperly issued, it will be presumed to be valid and properly issued under the uniform extradition act. The identity of the prisoner having been admitted it is not the province of the Kansas courts to go behind the governor's warrant to inquire as to whether he was a parole violator. That matter will be left to the courts of the demanding state."

See discussion and authorities in the opinion, pages 528 to 530. See, also, *Powell v. Meyer*, 134 N. J. L. 169, 46 A. 2d 671; *State v. Gregg*, 68 Ohio App. 397, 40 N. E. 2d 167; *Letwick v. State*, 211 Ark. 1, 198 S. W. 2d 830; *Cook v. Rodger, Sheriff*, 215 Ind. 500, 20 N. E. 2d 933; *Petition by Percy P. King*, 139 Me. 203, 28 A. 2d 562; *Spiak v. Seay*, 185 Va. 710, 40 S. E. 2d 250; *Cassis v. Fair*, 126 W. Va. 557, 29 S. E. 2d 245; *Taylor v. Smith*, 213 Ind. 640, 13 N. E. 2d 954; *In re Riggins*, 307 Mich. 234, 11 N. W. 2d 871; *Ex parte Birch*, 89 Okla. Cr. App. 417, 209 P. 2d 510; *In re DeFoe*, 179 Or. 334, 170 P. 2d 383; *Lincoln v. State* (Md. Jan. 16, 1952), 85 A. 2d 765.

In each of these cases, under varying circumstances, it was held that the courts of the asylum state have no right to consider the merits of the trial of a person sought to be extradited, or any questions pertaining to his guilt or innocence, or whether his constitutional rights were violated leading to his conviction, but can consider only question of asylum state's obligation to surrender him upon the governor's warrant. We find no authorities to the contrary.

Under this record the trial court was not justified in holding that the respective appellees here were not fugitives from justice of the state of California. Their stipulation discloses that each of them was in California; that each of them did do or participate in the doing of the matters alleged to be in violation of the criminal law of the state of California, and that at the time of the finding of the indictment by the grand jury they were in this state. The general rule is stated in 35 C. J. S. 324:

"A fugitive from justice, in the law of extradition, is one who, having committed or been charged with a crime in one state, has left its jurisdiction, and is found within the territory of another when it is sought to subject him to the criminal process of the former state. The purpose, motive, or manner of his flight is usually held immaterial, as is the fact that the state authorities or the complainant knew of, or consented to, his departure."

The above text is supported by many decisions of the federal courts and of the courts of last resort in many of our states, including

the case of *In re Martin,* 142 Kan. 907, 52 P. 2d 1196. To these may be added from our own state the case of *Tines v. Hudspeth,* 164 Kan. 471, 190 P. 2d 867, and *Thompson v. Nye,* 174 Kan. 750, 257 P. 2d 937 (opinion filed June 6, 1953.) We also observe that *In re Hess,* 5 Kan. App. 763, 48 Pac. 596, it was held:

"The term 'flee from justice,' in article IV, section 2, of the Constitution of the United States, includes cases where a citizen of one state commits a crime in another state and then returns home."

Cases are also collected under the title of Fugitive from Justice in 17 Words and Phrases, Permanent Edition, pages 751 to 766.

Counsel for appellees contend, first, no notice of appeal has been filed within time by any interested or prejudiced party. This question arises by reason of the fact that the deputy county attorney of Sedgwick county, who handled the case on behalf of respondents in the trial court, promptly filed a notice of appeal in the name of the state of Kansas. The real contention is that the state of Kansas had no right to perfect the appeal. This contention cannot be sustained. The Uniform Criminal Extradition Act (G. S. 1949, Ch. 62, Art. 7), is a part of the criminal laws of this state. The law enforcement officers of the state are authorized by the act to assist in its enforcement and as such had a right to appeal from the order allowing the writ and discharging the petitioners. (See, *In re Wadleigh,* 108 Kan. 682, 197 Pac. 217; *King v. McKnight,* 120 Kan. 692, 245 Pac. 105; *Bowers v. Wilson,* 143 Kan. 732, 56 P. 2d 1212; *James v. Amrine,* 157 Kan. 397, 140 P. 2d 362, and cases there cited.)

At a later date, before the hearing in this court, upon motion of counsel for the appellant, they were permitted to amend notice of appeal by filing one in the name of the sheriff of Sedgwick county and the agent of the state of California. If any amendment of the notice of appeal was necessary this procedure was authorized under G. S. 1949, 60-3310. (See, *Grant v. Reed,* 163 Kan. 697, 186 P. 2d 239.)

Counsel for appellees next contend that the trial court's order discharging petitioners is not a final appealable order. The point is not well taken. In *Bowers v. Wilson,* supra, the question was raised in a similar case and it was said (p. 739):

"The order of the district court discharging the prisoners is a final order and as such is, of course, appealable." (Citing G. S. 1949, 60-3302.)

See, also, *In re Jones,* 154 Kan. 589, 121 P. 2d 219, and *Powell v. Turner,* 167 Kan. 524, 207 P. 2d 492.

Counsel for appellant point out that no motion for a new trial was filed in the trial court and contend this court cannot disturb the findings of fact of the trial court. There was no necessity for a motion for a new trial. The record indicates that the trial in the court below was upon the papers filed in the court and a written stipulation of the parties.

We have examined all of the authorities cited by counsel, and many more, but find no reason for extending this opinion.

From what has been said it necessarily follows that the judgment of the trial court allowing the writs of habeas corpus and discharging the petitioners should be reversed.

It is so ordered.